**Donna C. WAGES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–84–645CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 5, 1985.

Rehearing Denied Jan. 9, 1986.

Charlotte Harris, Henry L. Burkholder, III, Houston, for appellant.

John B. Holmes, Dist. Atty., William J. Delmore, III, Asst. Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

The appellant, Donna C. Wages, appeals from a judgment of conviction for the offense of felony theft. The indictment alleged that appellant committed felony theft by aggregating amounts taken pursuant to a continuing scheme or course of conduct. Tex.Penal Code Ann. § 31.09 (*Vernon 1974*). The indictment included allegations of two prior felony convictions for the purpose of enhancement of punishment. Appellant pled not guilty and the jury found her guilty. Appellant pled not true to the enhancement allegations, and the court found the appellant had once previously been convicted of a felony offense and assessed her punishment at confinement in the Texas Department of Corrections for twenty years. We affirm.

Helen Williamson testified that she was employed at the Sellers Brothers' grocery store in Houston, Texas. In the course of her employment, on four different occasions, she cashed checks for the appellant. Williamson further specified that the checks were cashed on February 19th, 21th, 24th and 26th of 1983. The checks were drafted for amounts ranging from $198.32 to $199.88 on the "Wages Tire Co." account. Each check was made out to the appellant and was signed by her husband William W. Wages, Jr. Notations on the checks indicated that they constituted payroll advances or sales commissions. Each time the appellant cashed one of these checks, her husband was present. The bank did not honor any of the checks because the account was closed when the checks were written. Restitution was never made to the store.

Karen Gutierrez and Karen Adams were employed by Sellers Brothers' grocery stores during February 1983. Gutierrez testified that she cashed two checks for the appellant on February 16, 1983 and February 23, 1983, in the amounts of $199.63 and $199.75. Gutierrez further testified that on both occasions appellant's husband was present. Adams testified that she cashed checks for the appellant at Sellers Broth-

ers' grocery store on February 24, 1983 and February 25, 1983, in the amounts of $199.07 and $199.99. Adams further testified that the appellant was alone on February 24, 1983, but that the appellant was accompanied by her husband on February 25, 1983.

The four checks that Gutierrez and Adams cashed were written on the Wages Tire Co. account and were made out to the appellant and signed . by her husband. These checks were written as "payroll," "payroll advance," or "sales commission" checks. The bank did not honor any of these checks.

Jim Snelling, an officer of the First City Bank Gulfgate, testified that the Wages Tire Co. account was opened on November 11, 1982, and "forced closed" on February 9, 1983, after twenty (20) checks were dishonored during January 1983 because of insufficient funds in the account.

Each time a check was dishonored, the bank notified the Wages Tire Co. at the listed address of 7410 Park Place Boulevard, Houston, Texas. The bank mailed a notice of the closing of the account to this address.

The appellant's husband, who was also indicted for theft by check, testified as a defense witness. Appellant's husband served prison sentences on four prior occasions, including two which were based on worthless check convictions.

Mr. Wages testified that the appellant kept the books for his tire business, but he stated that he took over that task so that the appellant would not learn that he was writing worthless checks to obtain money to support his heroin habit. Wages admitted that the Wages Tire Co. mailing address, as printed on the checks, was actually the address of the apartment complex which the appellant managed. Wages further testified that the mail was delivered to the appellant's office, but he alleged that he instructed the appellant to "keep her damn hands off the mail," and also stated that he threw away over one hundred bank notices without revealing the contents to the appellant.

Wages went on to testify that he wrote approximately 150 checks on the account after it was closed, and that the appellant went along to cash approximately ten to twelve of these checks, after he told her "stories" about why it was necessary to repeatedly cash checks for slightly less than $200.00 at stores rather than at the bank.

In her first ground of error, the appellant contends that the trial court erred in its charge to the jury by failing to apply the law of mistake of fact to the facts of this particular case.

The Texas Penal Code, section 8.02(a), requires introduction of evidence that a defendant actually formed a particular belief before the defensive issue is raised. Mistake of fact is defined in the Texas Penal Code Ann. § 8.02 (Vernon 1974) as follows:

. (a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if *his mistaken belief* negated the kind of culpability required for commission of the offense.

(b) Although an actor's mistake of fact may constitute a defense to the offense charged, he may nevertheless be convicted of any lesser included offense of which he would be guilty if the fact were as *he believed*. (emphasis added).

It is obvious from the above stated definition that the mistake of fact defense is based solely on the mistaken belief of *the actor*. It looks to the conduct of others only to the extent that such conduct *contributes to the actor's mistaken belief* and does not look at all to the belief or state of mind of any other person. *Montgomery v. State*, 588 S.W.2d 950 (Tex.Crim.App.1979); *Lasker v. State*, 573 S.W.2d 539 (Tex.Crim. App.1978).

In the instant case, we find that the evidence did not support a charge on mistake of fact. Appellant in her brief claims that she was unaware of the insufficient status of the Wages Tire Co. account. However, at the time of trial, appellant

failed to testify, so any testimony by any other witness as to what appellant knew was pure conjecture. There was no evidence introduced to show that she acted under a belief that the Wages Tire Co. account was open and endowed with sufficient funds to cover the checks she passed within a ten-day period at the Sellers Brothers' Grocery Stores. Appellant's husband testified that he attempted to conceal his worthless check writing activities from the appellant, but there was not the slightest showing that he was successful in preventing her from learning of the status of the account, or that she ever formed any opinion or belief with regard to the status of the account at all. Additionally, it can not be shown from the evidence that the appellant had any other source of information available to her concerning the account, especially in light of the bank officer's testimony who stated that each time a check was dishonored the bank notified the Wages Tire Co. Obviously, absent appellant's testimony, there can be no showing that appellant did not have access to any other source of information. *Johnson v. State*, 635 S.W.2d 564, 566 (Tex.App.—Houston [14th Dist.] 1984), no pet.

We find that without appellant's testimony that she formed a mistaken belief as to the status of the Wages Tire Co. account, the defense of mistake of fact was not raised by the evidence. *Johnson v. State*, *supra*.

The Texas Penal Code, section 8.02 requires the defendant to show that he "formed a *reasonable belief* about a matter of fact." A "reasonable belief" is defined by the penal code as one "that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex.Penal Code Ann. § 1.07(a)(31) (Vernon 1974). The question in the instant case is: does the evidence show that the appellant could have formed a "reasonable belief" that the Wages Tire Co. bank account had sufficient funds to cover the eight checks that she cashed during the ten-day period?

According to her own witnesses, over one hundred bank notices, concerning dis-honored checks, were delivered to her office as well as a notice of the closing of the account and a final bank statement. There was no evidence presented to show that the appellant did not open and read any of these bank communications. It would seem that an ordinary and prudent person under the circumstances would recognize a duty to confirm the status of the account, at least prior to embarking on an extraordinary course of check-cashing activity in the local stores. Furthermore, the false notations made regarding the purposes of the checks indicate the appellant's knowledge that a theft scheme was in progress thus rendering any belief in the value of the checks unreasonable.

We find no evidence that the appellant formed a mistaken belief which would negate the culpable mental state of the theft offense because any such belief would not be reasonable under the circumstances. The mistake of fact defense was not raised by the evidence.

We find that any error in the court's charge in which the defense of mistake of fact was presented to the jury was entirely harmless since the appellant received more than she was entitled to in the charge given. Appellant's first ground error is overruled.

Appellant alleges in her second ground of error that the trial court committed reversible error in overruling appellant's Motion for Mistrial, where the state argued to the jury that the only reason the jury had to come to court for four days was because the appellant insisted on a trial. The prosecutor's statements were as follows:

Thank you, Judge. Ladies and gentlemen, what you've just heard from the defense lawyer amounts to a sympathy plea. Don't let the defendant in this case or her attorney put the monkey on your back. You didn't ask to spend four days down here at the courthouse this week. You didn't get a subpoena to come down and be a juror. I didn't ask to be here. The judge didn't ask to be here. Donna Wages has brought us all here today and for the last four days.

MS. HARRIS (defense counsel): Your Honor, I'm going to object. That argument is prejudicial to the defendant's right to a fair trial.

THE COURT: That's sustained. Members of the jury nobody brought us here. We are here because we are here.

MS. HARRIS: And Your Honor, at this time, I'd ask for a mistrial.

THE COURT: You will not consider that remark for any purpose whatsoever, members of the jury. You will disregard it completely. Defendant's Motion for Mistrial is denied.

The State's position is that the trial prosecutor was evidently responding to an argument of defense counsel which emphasized the onerous burden of serving as a juror. This argument is as follows:

MS. HARRIS: ... Now I'm talking to you. And what you're going to do today is so serious. This is one of the most important decisions I believe that you'll make in your life. Today you're deciding—you all said on voir dire that none of you have ever been on a criminal jury before. What you're deciding today is what happened to someone's life; whether or not this person will be deprived of their liberty.

The State alleges the trial prosecutor's rebuttal comments were invited by the appellant's argument, and were not improper. We do not agree.

■ The law in this State is clear that a prosecutor must confine his jury arguments to one of four permissible areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim.App.1980); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). Appellate courts must not hesitate to reverse when it appears a prosecutor has departed from one of these areas in his argument and has engaged in conduct calculated to deny an accused a fair and impartial trial.

After examining the statement of facts and the above quoted remarks, we are of the impression that the prosecutor's comment does not fit into any of the four areas. Although the prosecutor's comments were improper, we do not believe that it constitutes reversible error.

In *Thompson v. State*, 480 S.W.2d 624 (Tex.Crim.App.1972) the Court of Criminal Appeals set out a standard by which to judge improper comments by a prosecutor. The standard is as follows:

■ The test as to whether an improper argument constitutes reversible error is whether: (1) the argument is manifestly improper, harmful and prejudicial, or (2) it is violative of a statute or, (3) it injects a new and harmful fact into the case. In determining whether the argument is manifestly improper, harmful and prejudicial, reviewing court's are to consider the comments in light of the record as a whole and in relation to the probable effect on the minds of the jurors. *Blansett v. State*, 556 S.W.2d 322, 328 (Tex.Crim.App.1977); *Dickson v. State*, 642 S.W.2d 185 (Tex.App. —Houston [14th] 1982) pet. ref'd.

In addition to the above standards, the Court of Criminal Appeals has attempted to establish a test for reversal in situations where, as here, the trial court instructed the jury to disregard the improper comments:

An instruction to disregard will cure error except in extreme cases where it appears the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Dickson v. State, supra.*

■ In the instant case, after reviewing the record as a whole, we hold the instructions to disregard cured any error. We do not find that prosecutor's comments were so inflammatory that their prejudicial effects were not removed by the judge's instructions to disregard. Appellant's second ground of error is overruled.

In her third ground of error, appellant complains the trial court erred in admitting photocopies of checks unrelated to this offense.

State's Exhibit No. 9 consisted of photocopies of records of the Wages Tire Co. account, including dishonored check notices and a number of unrelated checks. The State's purpose in introducing this exhibit was to show to the jury copies of the dishonored check notices and not the unrelated checks. The record shows that each and every check which was contained in State's Exhibit No. 9 was stamped paid by the appellant's bank, in large letters across the face of the check. Since none of these checks were dishonored it is difficult to understand how the jury could have inferred from them the commission of extraneous offenses. We overrule ground of error number three.

In her fourth and fifth grounds of error, appellant complains that the court erred in admitting testimony concerning four dishonored checks given to two store clerks, in addition to those cashed by the complainant, Helen Williamson. Appellant alleges that this evidence constituted extraneous offenses.

It is an established general rule of evidence that proof of similar happenings, extraneous transactions or prior specific acts of misconduct committed by a party is irrelevant to the contested material issues in the case on trial and therefore inadmissible. *Sanders v. State*, 604 S.W.2d 108 (Tex. Crim.App.1980). However, in light of this general rule, there are instances when evidence of extraneous offenses is admissible.

Extraneous transactions constituting offenses shown to have been committed by an accused may become admissible upon a showing by the prosecution both that the transaction is relevant to a material issue in the case and the relevancy value of evidence outweighs its inflammatory or prejudicial potential. *Sanders v. State*, 604 S.W.2d 108, 111 (Tex.Crim.App.1980); *Holley v. State*, 582 S.W.2d 115 (Tex.Crim.App. 1979). The well-known exceptions to the

general rule against extraneous offenses were set forth in *Christiansen v. State*, 575 S.W.2d 42, (Tex.Crim.App.1979) and *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim. App.1972), as follows:

" 'Evidence of extraneous offenses committed by the accused has been held admissible: (1) To show the context in which the criminal act occurred—what has been termed the "res gestae"—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. (2) To circumstantially prove identity where the state lacks direct evidence on this issue. (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, when malice is an essential element of the state's case and cannot be inferred from the criminal act. (5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part. (6) To refute a defensive theory raised by the accused.' "

When an accused is charged with passing worthless checks, evidence of passing other worthless checks is admissible to show intent or scheme. *Christiansen v. State*, 575 S.W.2d 42 (Tex.Crim.App.1979). In the instant case, the appellant alleges that the trial court erred in allowing into evidence testimony of two store clerks who had cashed other worthless checks in addition to those cashed by the complainant which were not alleged in the indictment. Appellant argues that these are extraneous offenses, testimony of which should have been excluded. We disagree.

In light of the ruling in the *Christiansen* case along with other similar cases, we find that the trial court properly admitted the above stated evidence to show

appellant's intent and a common scheme or plan. Accordingly, grounds of error four and five are overruled.

In her sixth ground of error, appellant alleges that the trial court erred in permitting cross-examination of her spouse on matters beyond the scope of the direct examination. During the trial, the prosecutor asked appellant's husband about the existence of bank accounts that were not the subject of this prosecution and therefore exceeded the scope of direct examination.

The Texas Court of Criminal Appeals held that a wife who is called to testify in her accused husband's behalf may be cross-examined on matters concerning which she testified on direct, and also as to matters that are germane and pertinent to her direct testimony, but which were not specifically brought out on direct. *Mitchell v. State*, 517 S.W.2d 282 (Tex.Crim.App.1974).

■ The above stated case is similar to our situation in that we have appellant's husband testifying on her behalf. The thrust of the direct examination of appellant's husband was to show that he successfully concealed the closing of the Wages Tire Co. account from her, by taking over the bookkeeping duties which she previously performed, by attempting to prevent her from perusing the multitude of bank notices sent to them concerning the account and by deceiving her as to the reason for their bizarre check cashing activity. The existence of another joint bank account and the status of that account were certainly "germane and pertinent" to the issue of the appellant's knowledge of their banking affairs, as discussed during the direct examination of her husband. In light of the foregoing, we find that the prosecutor was justified in exceeding the scope of direct examination. Accordingly, we overrule appellant's sixth ground of error.

In grounds of error seven through ten, appellant alleges that the trial court's restitution order requiring appellant to pay $1,991.41 as a term and condition of parole is in error. Appellant specifically alleges that the trial court erred in: (1) failing to conduct a separate hearing to determine the proper amount of restitution; (2) ordering appellant to pay an amount that is not supported by the evidence; (3) ordering payment to the "complaining witness" where there was no evidence to support the fact that complainant actually suffered a loss; and (4) failing to name the complainant in the judgment.

■ Due process does not require that a separate hearing be held to determine the amount of restitution. Due process requires sufficient evidence in the record to show the amount ordered by the trial court. *Vanderburg v. State*, 681 S.W.2d 713 (Tex.App.—Houston [14th Dist.] 1984); *Barker v. State*, 662 S.W.2d 640 (Tex.App.—Houston [14th Dist.] 1983), no pet. The evidence in the record indicates the face value of the eight (8) worthless checks passed by the appellant at Seller Brothers' Grocery store amounted to $1594.74. The trial court ordered the appellant to make restitution to the complaining witness in the amount of $1,991.41. This was pursuant to the Texas Code of Criminal Procedure, Article 42.12 § 15(g) (Vernon 1979). Clearly there is a discrepancy between the restitution ordered by the trial court and the actual financial loss shown in the record, therefore, we will reform the judgment of the trial court.

■ Where the court has the necessary data and evidence before it for reformation, the judgment may be reformed on appeal. *Brewer v. State*, 572 S.W.2d 719, 723 (Tex.Crim.App.1978); *Hancock v. State*, 491 S.W.2d 139 (Tex.Crim.App.1973); *Norman v. State*, 642 S.W.2d 251 (Tex.App.—Houston [14th Dist] 1982), no pet. Accordingly, pursuant to our authority under Article 44.24(b) of The Texas Code of Criminal Procedure (Vernon 1979), the restitution order is reformed to delete the amount of $1,999.41 that the court ordered paid as restitution and the amount is reformed to reflect the amount of $1,594.74 (face value of the eight checks).

Finally, the appellant alleges that the restitution order does not specifically name

the *complaining witness*. The court ordered payment of restitution to the complaining witness. Helen Williamson was designated the complaining witness in the indictment or owner of the money made the subject of this theft. The record indicates that she worked for Sellers Brothers' Grocery Stores as a cashier. She was a special owner of the money for indictment purposes only, but Sellers Brothers' Grocery Stores was the real owner. We find that it is also necessary to reform the judgment in this area pursuant to Article 44.24(b), supra. We find the record supports reformation of the restitution amount of $1,594.74 be made payable to Sellers Brothers' Grocery Stores. *Vanderburg v. State, supra; Norman v. State, supra.* Appellant's seventh ground of error is overruled. Appellant's eighth, ninth and tenth grounds of error are sustained.

In her eleventh and final ground of error, the appellant alleges that the trial court erred in overruling her objection to the prosecutor's argument as to the credibility of the appellant's husband as a witness. The prosecutor argued:

MISS ACCORD: They got away with thousands of dollars. What do you think—Everyone on the jury knows that William Wages is the co-defendant in this case. He told you he has a pending case regarding these same charges. What do you think the Defense Counsel is going to argue in that trial? If you acquit Donna Wages because she was the duped wife, what do you think the next jury is going to do? Who will be duped in that one? Will it be William Wages?

MS. HARRIS: (Defense Counsel) I object, Your Honor. What this jury does, cannot be compared to other juries. And Your Honor, I don't believe that William Wages is named as a co-defendant in this case.

THE COURT: Objection is sustained. Objection is sustained. Members of the jury, don't concern yourself with what any other jury might do in any other case, only as to this evidence and the law that you have heard in this case. Objection is sustained.

MISS ACCORD: May I proceed, Judge?

THE COURT: Yes, ma'am.

MISS ACCORD: If William Wages were the one on trial today for these checks, do you think it would be twisted around that somehow William Wages didn't know what was in the account? Of course, it would.

MS. HARRIS: Your Honor, I object. William Wages, it was shown that his testimony can be used against him in his prosecution.

THE COURT: Overruled. Go ahead.

MISS ACCORD: If you think about it, ladies and gentlemen, they came up with the only defense they could, if you call it a defense ...

The appellant is saying that the State went outside the record in arguing that the appellant's husband would be free to change the testimony he gave in appellant's cause in his trial.

■ An objection to jury argument that does not comport with the ground of error asserted on appeal does not preserve anything for review. *Euziere v. State*, 648 S.W.2d 700, 703–704 (Tex.Crim.App.1983); *Simpkins v. State*, 590 S.W.2d 129, 136 (Tex.Crim.App.1979). The appellant did not object on grounds that the prosecutor's argument strayed from the record, and the trial court could not have inferred such grounds for objection from counsel's ambiguous remark that "it was shown that his testimony can be used against him in his prosecution." Nothing is presented for review.

■ Furthermore, the trial prosecutor made a reasonable deduction from the evidence in commenting upon William Wages' credibility as a witness. *Loar v. State*, 627 S.W.2d 399, 401 (Tex.Crim.App.1981). He also was charged with the offense of theft because he presented numerous worthless checks at various stores, and the prosecutor merely pointed out his lack of credibility as a co-conspirator attempting to absolve his spouse of criminal liability by claiming

sole responsibility for their scheme. We find that the prosecutor's argument was proper and overrule appellant's eleventh ground of error.

Accordingly, the judgment of the trial court is affirmed.