**AFFIRMED and Opinion Filed December 3, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00512-CR

### ANGELA LYNN SERNA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-82217-2017**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Reichek

Angela Lynn Serna appeals her conviction for theft of property from an elderly person with a value greater than or equal to $150,000 and less than $300,000. Bringing two issues, appellant contends the evidence is insufficient to support the jury's verdict and the trial court erred in ordering restitution. We affirm the trial court's judgment.

### Factual Background

Appellant was employed as the office manager of Anna Mobile Home Park. Appellant was also a resident of the park. The park was owned by Meltex, a small family-owned corporation that was 100% owned by Anthony and Anna Geer. Anna Geer died in September of 2013 and, having been predeceased by her husband, ownership of Meltex passed to the Geers' four children.

One of the Geers' daughters, Amoret Cain, took over management of the mobile home park. Cain was sixty-five years' old at the time. Appellant continued as the park's office manager.

Appellant's duties as office manager included collecting rent from tenants and depositing the money in the park's bank account. The evidence showed that rent payments were generally made with cash. At the time the payments were made, appellant would write out deposit slips in triplicate and give one copy to the tenant as a receipt. The other two copies would be clipped to the money and taken to the bank. Once the deposit was made, the bank would return one copy of the deposit slip for the park's records. Appellant would also record the rent payments in a ledger.

On multiple occasions from 2013 to 2016, appellant asked Cain if she could borrow money. The first loan was for $2,500, which appellant repaid with interest. The last loan was in 2016 for $1,500. Appellant repaid approximately half of the last loan.

In July 2016, Cain began to notice that the bank statements for the mobile home park's account were showing a significant decrease in monthly deposits. Cain asked appellant about the drop in deposits and appellant responded that there were vacancies in the park and some people were not paying their rent. Cain asked appellant to fill in a spreadsheet going back to the first of the year to show who wasn't paying. After Cain asked appellant about the spreadsheet for several weeks, appellant eventually told her that she "had some bad news." She told Cain that someone had been stealing the rent money out of her purse, but that she would pay it back. Appellant had filled out the spreadsheet for January and February showing that approximately $6,000 was missing. Cain did more research into the amounts missing and discovered payments missing from January through July of 2016 totaling about $47,000. At that point, Cain began to suspect appellant was stealing the money.

Cain decided to take the matter to the police. Officer Joshua Devore with the Anna Police Department interviewed appellant and she told him she believed the rent money had been stolen

from her bag. Appellant stated she took the bag of rent money with her everywhere including friends' houses, restaurants, and casinos and that many people had access to it. Appellant told Devore she believed $6,000 was missing, she understood the money was her responsibility, and she would pay it back.

On the recommendation of the Anna Police Department, Cain hired an independent forensic investigator to review the mobile home park's accounts. Cain hired Steve Dawson, a certified public accountant and fraud examiner with extensive experience in fraud investigations and reviewing accounting records. After reviewing the park's records, Dawson determined there were 566 instances of missing deposits over the course of three years totaling $207,707. Dawson stated that, because they were dealing with cash transactions, the thefts were hard to trace. But, based on the number of occurrences, it was unlikely the missing deposits were accidental or that the money was taken by someone outside the organization. Appellant was arrested and charged with theft of currency with a value of $150,000 or more, but less than $300,000. The victim of the offense was alleged to be Cain.

At trial, the State called Cain, Devore, and Dawson as witnesses who testified to the above facts. In addition, the State presented the testimony of Clyde Geer, Cain's brother, who helped Cain occasionally with maintenance and other issues at the mobile home park. The State proved up the park's bank records through Donna Walker, the bank's assistance compliance officer.

Appellant presented the testimony of Detective Rush Lee Smith who assisted Devore with the police investigation. Rush testified they did not interview any other witnesses in the course of the investigation and did not talk to the maintenance workers who had access to the park's office. Ruth further testified they did not obtain a warrant to search appellant's home or belongings.

Appellant also called nine character witnesses, most of whom lived in the mobile home park along with appellant. All of these witnesses testified appellant had a good reputation in the

community for honesty and trustworthiness. They further stated they were surprised by the allegations against appellant and they had not noticed any changes in appellant's spending habits or that she had begun carrying a large amount of cash. Financial records showed appellant had to finance cars she purchased for herself and her daughter and that she had trouble paying off a previous loan.

After hearing the evidence, the jury convicted appellant of the theft offense as alleged in the indictment. The trial court assessed punishment at ten years' confinement, probated for a period of ten years. The trial court further ordered appellant to pay Cain restitution in the amount of $207,707 and assessed court costs of $555.88. Appellant brought this appeal.

## Analysis

### I. Legal Sufficiency of the Evidence

In her first point of error, appellant contends the evidence is legally insufficient to support the jury's finding of guilt. When reviewing a challenge to the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). The factfinder is the sole judge of the witnesses' credibility and their testimony's weight. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The factfinder may choose to disbelieve all or any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611,

614 (Tex. Crim. App. 1986). Each fact need not point directly and independently to the guilt of the appellant as long as the cumulative force of all the incriminating circumstances is enough to warrant conviction. *See Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.—Amarillo 2008, pet. ref'd). Circumstantial evidence is as probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 20004).

Appellant first contends the evidence is insufficient to show she was responsible for any of the missing deposits. Appellant points to the fact that she was not the only one who collected rent money because Cain and her brother would do so as well. However, Geer testified he had very little involvement with the park and only dealt with rent payments "occasionally." Cain stated she accepted rent payments only "a time or two." Cain further testified appellant was the person who took the money to the bank. Although appellant argues the deposit slips show different handwriting, the only handwriting evidence presented to the jury showed otherwise. In fact, it was appellant's counsel who stated at trial that it was appellant's handwriting "pretty much on every deposit slip that's in the bank records" and Cain confirmed this fact.

Appellant states it was plausible that someone else could have taken the money because she was not the only one with keys to the office. Appellant argues the State's failure to investigate other possible perpetrators means her conviction is based on speculation. Appellant further argues that the fact she left the deposit money unattended shows, at most, she was reckless or negligent and does show the level of intent necessary to support her conviction. But the State's theory of the case was not that appellant recklessly allowed someone else to steal the deposits. Rather, the State alleged appellant intentionally stole the deposits herself. The record shows the only people other than appellant who had keys to the office were Cain, Geer, and a maintenance worker with whom Geer worked. The State's alleged failure to affirmatively investigate other people who may

–5–

have had access to the money does not render the evidence showing appellant's guilt speculative or insufficient.

The evidence showed that 566 deposits were missing and appellant was the only person with consistent access to the money before she deposited it with the bank. The missing deposits occurred during a period in which appellant was having financial difficulties. When confronted with evidence of decreasing bank deposits, appellant first stated the cause was vacancies and delinquent payments. It was only after appellant was forced to show support for that claim that she stated the rent money had been taken from her purse. Appellant delayed for weeks before confessing to the missing money and, even then, she calculated missing deposits for only a two month period when she was asked to examine the accounts for a seven month period. Appellant told the police she took the rent money with her to places like restaurants and casinos where she left it unsecured so that it was possible people took the money from her bag. The jury was free to disbelieve the possibility that people stealing from appellant's purse without her knowledge was the cause of 566 missing deposits over three years. Attempts to conceal evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt. *Id.*

Appellant next contends the evidence is insufficient to show the value of the money taken as alleged in the indictment. The indictment in this case alleged that appellant unlawfully appropriated United States currency with a value of $150,000 or more, but less than $300,000, from Cain, an elderly individual. The jury charge shows the jury found appellant guilty of theft as alleged in the indictment. The State presented the calculations of a forensic investigator showing that $207,707 was taken over a three-year period.

Appellant argues the report prepared by Dawson is insufficient to support the verdict because his calculations are flawed resulting in a "17% error rate" and a discrepancy of "at least

$32,270." Although appellant's counsel cross-examined Dawson at length during trial, at no point did he question Dawson about what the defense now alleges are errors in his calculations. Indeed, appellant's counsel never argued at trial that the number of missing deposits found by Dawson was inaccurate. Yet appellant asks this court to review the mobile home park's accounting records on appeal to determine the accuracy of Dawson's report without permitting Dawson the chance to respond. It is not our role to resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses. *See Dewberry*, 4 S.W.3d at 740. The information upon which appellant relies was before the jury and it was free to make its own determination.

Furthermore, although appellant apparently performed a thorough review of the records admitted at trial, she points to alleged discrepancies in Dawson's report amounting to only $32,270. Even assuming this is correct, the evidence would still show appellant unlawfully appropriated $175,437. This amount is well within the value range alleged by the State in the indictment and found by the jury at trial.

Appellant next asserts the State failed to prove the property allegedly taken by appellant was United States currency because there was no evidence to show the missing deposits were paid in cash. Appellant points to the park's bank records showing that some rent payments were made by money order or by check. Again, however, appellant did not present this as a disputed fact issue to the jury. Appellant's counsel referred to the missing deposits at issue as "cash transactions" in both his questions of the witnesses during trial and in his closing arguments to the jury. Cain testified that rent payments were "typically" paid in cash and Dawson confirmed that this case involved "cash transactions" and "cash type fraud." Dawson further testified that "cash type frauds are very difficult to trace" because there would be no "bank trail." Accordingly, even if the bank records showed some rent payments were made by other means, the jury could have

determined, and the evidence supports the finding, that it was more likely appellant stole cash deposits because they were easier to hide.

Finally, appellant contends the evidence is insufficient to support the jury's finding that the owner of the allegedly stolen property was an elderly individual. Appellant argues the true owner of the money was not Cain, but Meltex, the corporation that owned the mobile home park. Appellant's argument is without merit.

The Texas legislature has given the term "owner" an expansive meaning that includes anyone having a greater right to possession of the property than the defendant. TEX. PENAL CODE ANN. § 1.07(a)(35)(A); *Garza v. State*, 344 S.W.3d 409, 413 (Tex. Crim. App. 2011). In this case, the undisputed evidence showed that Meltex was 100% owned and operated by Cain and her siblings. Accordingly, any money owed to Meltex would directly benefit Cain. This evidence is sufficient to show that Cain was an owner of the funds as defined by the penal code. *See Merryman v. State*, 391 S.W.3d 261, 276–77 (Tex. App.—San Antonio 2012, pet. ref'd).

The indictment alleged the thefts took place between January 1, 2014 and November 15, 2016. Cain testified at trial that she was born in October 1947. Therefore, Cain was 66 years old when the alleged thefts began. The court's charge instructed the jury that an "elderly individual" means a person 65 years of age or older. We conclude the evidence is sufficient to show that the owner of the stolen property was an elderly individual. Based on the foregoing, we resolve appellant's first issue against her.

## II. Restitution

In her second issue, appellant contends the trial court erred in ordering restitution. Whether to order restitution is a matter left to the sound discretion of the trial court. *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980). But the amount of restitution set by the court must have a factual basis. *Id*.

The judgment in this case orders appellant to pay $207,707 in restitution to the "victim." Appellant contends there is no evidence to support the amount of restitution because it is possible that some of the deposits allegedly stolen were checks or money orders and there was no evidence she ever negotiated the instruments. *See Orr v. State*, 836 S.W.2d 315, 318–19 (Tex. App.—Austin 1992, no pet.). As discussed above, however, the evidence is sufficient to support the jury's finding that all the payments misappropriated by appellant were paid in cash. The State presented evidence the total amount taken by appellant was $207,707. Accordingly, we conclude the trial court had a factual basis for the amount of restitution ordered.

Appellant additionally argues it was error for the trial court to order the restitution be paid to Cain because she was not a direct victim of the offense. Appellant contends the only direct victim was Meltex. She relies on the case of *Wages v. State*, 703 S.W.2d 736 (Tex. App.—Houston [14th Dist.] 1985, pet. dism'd) to support her argument.

In *Wages,* the defendant was charged with felony theft for cashing worthless checks at a grocery store. *Id.* at 738. For indictment purposes, the State designated one of the cashiers of the grocery store as a "special owner" of the property and the victim of the offense. *Id.* at 744. A "special owner" is an individual who is in custody or control of property that belongs to another. *Byrd v. State*, 336 S.W.3d 242, 252 (Tex. Crim. App. 2011). Because the cashier was only a special owner, the court concluded it was improper for her to receive the restitution payment instead of the real owner, which was the grocery store. *Wages*, 703 S.W.2d at 744.

The analysis in *Wages* is inapplicable here. Unlike the cashier in *Wages* who was merely an employee of the company from which the money was taken, Cain is an owner of Meltex. As an owner of the corporation, Cain was a real owner of the stolen property and suffered a direct loss as a result of appellant's actions.

Appellant further argues the award to Cain was improper because there was no evidence to show her percentage ownership interest in Meltex. Because Cain was only one of four owners, appellant suggests she was not entitled to the full amount. Appellant relies on the opinion of the court of criminal appeals in *Martin v. State*, 874 S.W.2d 674 (Tex. Crim. App. 1994).

In *Martin*, the defendant was indicted and convicted of defrauding an investor in the amount of $3,717.19. *Id.* at 675. As a condition of probation, the trial court ordered the defendant to pay restitution in the amount of $65,179.08, which was half the total amount allegedly lost by approximately forty investors. *Id.* On appeal, the court of criminal appeals held the amount of restitution awarded to the victim could not include amounts owed to victims of other crimes for which the defendant had been neither charged nor convicted. *Id.* at 677–78.

Unlike the facts presented in *Martin*, appellant in this case was charged and convicted of unlawfully appropriating property with a value of $150,000 or more, but less than $300,000. The amount of restitution awarded by the trial court was within the range found by the jury. The only alleged victim of the entire unlawful appropriation was Cain.

In determining what amount of restitution to award, the court considers the amount of the loss sustained by *any* victim and any other factors the court deems appropriate. TEX. CODE CRIM. PROC. ANN. art. 42.037(c). The evidence here showed that, although Meltex was owned by Cain and her three siblings, it was Cain who managed all of the mobile home park's operations. In addition, Cain received all the park's bank statements and was solely responsible for the park's finances. On this record, we conclude the trial court did not err in ordering the restitution be paid to Cain as the victim of the offense. We overrule appellant's second issue.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180512F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## **JUDGMENT**

ANGELA LYNN SERNA, Appellant

No. 05-18-00512-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-82217-2017.
Opinion delivered by Justice Reichek.
Justices Pedersen, III and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 3, 2019