Arland Lee HOLLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 55449.

Court of Criminal Appeals of Texas, Panel No. 1.

April 4, 1979.

Rehearing En Banc Denied June 27, 1979.

Patrick Roland Ganne, Austin, for appellant.

Ronald D. Earle, Dist. Atty. and Richard E. Banks, Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for aggravated sexual abuse. V.T.C.A. Penal Code, Sec. 21.05. Appellant was tried before a jury, which assessed his punishment at thirty (30) years in the Texas Department of Corrections.

In his second ground of error, appellant complains of the admission into evidence of six extraneous offenses. Appellant was convicted of aggravated sexual abuse on the female complainant. All of the extraneous offenses constituted similar assaults on women, committed both before and after the instant offense. The sufficiency of the evidence to sustain the conviction is not challenged. However, a recitation of the evidence is necessary.

The complainant testified that on June 25, 1974, she was the assistant manager of an apartment complex. She stated that appellant came to the office and inquired about renting an apartment for himself and his wife. When the two went alone to an apartment, appellant grabbed the complainant and threatened her with a knife. He partially undressed her, fondled her breasts and forced her to kiss his penis, and then left. The State introduced into evidence a confession, signed by appellant, which was admitted without objection.

Appellant presented a defense of insanity. Psychologist Donald Reynolds testified on behalf of the defense, and stated that he first met appellant on February 3, 1975. Reynolds stated that he administered several psychological tests to appellant. During his testimony, he interpreted and discussed at length the test results. Reynolds testified that:

"[Appellant] is a person who often, if not usually, feels unable to cope very effectively with stresses placed upon him. He appears to have two main areas of difficulty: (1) In dealing with authority figures, and (2) in dealing with females . . . In dealing with [females], he may simply feel overwhelmed or isolated and in need of affection. When this is not forthcoming, he may tend to retreat into fantasy or act out, that is, engage in sexually unacceptable acts . . . the prominent symptoms displayed by Mr. Holley are fair to good adjustment in the absence of stress, that is, he gets along pretty well when he's not stressed, followed by periods of acting out, which are totally alien to him when he's not stressed, followed by guilt and often horror at what he has done . . . He is somewhat immature and has a great deal of anxiety as a persisting stress, that is, he feels anxiety much of the time, and it goes on as a persisting stress . . . One line of defense is daydreaming and fantasy. When that breaks down, he can't contain the anxiety that he feels. He pulls back to another mode, which is acting out behavior, committing sexually unacceptable acts."

Upon cross-examination, Reynolds expressed the opinion that, when appellant encountered certain stressful situations, he was unable to conform his conduct to the requirements of the law. He stated that, however, he did not know whether appellant was in a stressful situation on the date of the offense. Reynolds testified that if appellant had been under stress on that date, he would not have been able to conform his conduct to the law, but that if he was not under stress, he would have been so able. Reynolds further testified that appellant did not tell him specifically of any stressful situation which might have caused his behavior on the date of the offense and that his professional opinion was based primarily upon the test results rather than from information received from appellant.

Psychiatrist Dr. Richard Coons was also called to testify by the defense. He stated that appellant had related to him concerns about sex and his concern about his inability to impregnate his wife. Appellant had told Dr. Coons that he had been tested and found to have had a low sperm count or oligospermia. This oligospermatic condition had caused problems in his marriage, and appellant had been very concerned about it. Dr. Coons testified that, however, appel-

lant's wife had become pregnant in about June of 1974. Dr. Coons stated that this condition had previously been a source of stress for appellant.

Upon cross-examination, Dr. Coons testified that he had the impression that had appellant known that he could impregnate his wife, that he might not have committed "these offenses." [1]

Out of the presence of the jury, the prosecutor elicited testimony from Dr. Coons that appellant had informed him of the commission of four like offenses on February 19, 1974, and another two weeks later, and one more two weeks after that. Appellant had left Dr. Coons with the impression that the offenses had all occurred in February and March, before his wife became pregnant in June. The prosecutor then asked:

"Q. Now, had you been told of other offenses that occurred in the month of June, the month of August, the month of October, and the month of December 1974, would your feelings at that time as to his stressful situations be different?

"A. [Dr. Coons] Well, certainly the issue of whether or not he was oligospermatic, or low on sperm, would not be—You know, not have the stressful weight that it had, having impregnated his wife.

"Q. Would this make a difference as to your feelings as to whether or not his actions were as a result of his feeling unable to impregnate his wife?

"A. I think that that is only a part of the reasons that what happened happened. You know, I don't consider it to be the thing which caused him to do what he did. I think that there are a number of personality factors. I think—you know, he described some marital difficulties and so forth, and all of these things

together would, let's say, be operative as stressful circumstances. Now—well, that's—my opinion about, you know, about the final question would remain unchanged.

"Q. But would your opinion as to whether or not the Defendant was acting because of his inability to impregnate his wife change?

"A. Well, certainly that wouldn't be an operative factor after she had become pregnant.

"Q. But he had told you that was an operative factor, is that correct?

"A. Yes, he related to me that the offenses occurred and related no offenses after the time his wife became pregnant."

Appellant's objection to the admission of the extraneous offenses was overruled. In the presence of the jury, the prosecutor then elicited testimony from Dr. Coons concerning the fact that appellant had told him about the offenses committed in February and March. The prosecutor then asked whether appellant told Dr. Coons about offenses committed in June, August, October and December of 1974. Dr. Coons stated that appellant had not told him about any such offenses. Dr. Coons then testified that he did not believe that on the date of the offense appellant either did not know his conduct was wrong or that he was incapable of conforming his conduct to the requirements of the law.

On rebuttal, the State presented the testimony of six women, five of whom were assaulted by appellant in a like manner as they showed apartments to him.[2] Appellant contends that the admission into evidence of these extraneous offenses constituted reversible error. We agree.

In *Hines v. State,* 571 S.W.2d 322 (Tex.Cr. App.1978), we reiterated that it is well established that an accused may not be tried for some collateral crime or for being a

---

1. We note that reference was made to "these offenses" and "these events" by the witness and the prosecutor. No objection to this plural form was voiced by appellant, however.

2. The sixth woman testified that appellant had grabbed her as she walked in her apartment complex.

criminal generally. *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975); *Halliburton v. State,* 528 S.W.2d 216 (Tex.Cr.App.1975); *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr.App.1973). However, as we stated in *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972), there are exceptions to this general prohibition against the use of extraneous offenses.

In *Albrecht v. State,* supra, this Court stated that:

"Evidence of extraneous offenses committed by the accused has been held admissible: (1) To show the context in which the criminal act occurred—what has been termed the 'res gestae'—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. (2) To circumstantially prove identity where the state lacks direct evidence on this issue. (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, when malice is an essential element of the state's case and cannot be inferred from the criminal act. (5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part. (6) To refute a defensive theory raised by the accused."

In the instant case, none of the enumerated exceptions are applicable. The complainant positively identified appellant as her assailant, and a confession of appellant's guilt was introduced at trial. Neither motive, intent or state of mind was in issue. Further, we hold that the evidence of these extraneous offenses did not refute the defensive theory raised by appellant.

Appellant's defensive theory was that he was insane at the time he committed the offense. He offered evidence that he had great difficulty in controlling his behavior when he was under stress. Dr. Coons testified that appellant's oligospermatic condition was a source of stress for him. However, Dr. Coons testified that when appellant's wife became pregnant in June this particular source of stress would have been removed.

The State now contends that the evidence of his attacks upon other women, committed after his wife became pregnant, rebutted his defense that at the time that he assaulted the complainant he was unable to conform his conduct to the law because he was under stress. This contention is untenable.

Dr. Reynolds testified generally as to appellant's inability to handle stressful situations. Dr. Coons testified specifically that appellant's oligospermatic condition was but *one* source of stress in his life. Thus, the fact that appellant committed further attacks upon women after this one source of stress was removed does not tend to prove that he was *not* under some particular stress at the time he committed the assault on the complainant. Thus, appellant's further assaults on the women other than the complainant are not probative evidence of the presence or absence of sanity. Since the extraneous offenses are not probative of this issue of sanity, they should not have been admitted into evidence.

In *Jamerson v. State,* 550 S.W.2d 287 (Tex.Cr.App.1977), we held that the mere commission of extraneous criminal offenses by a defendant does not, in and of itself, tend to rebut a defensive theory of insanity at the time of another offense. The fact that a defendant commits or has committed numerous similar criminal acts does not tend to prove that he was sane.

We recognize, as did the dissenting opinion in *Jamerson,* the cases of *Sanders v. State,* 450 S.W.2d 871 (Tex.Cr.App.1970) and *Sanders v. State,* 449 S.W.2d 262 (Tex.Cr.App.1970). In each case, the defendant had raised the defense of insanity, claiming that he was under a psychomotor seizure at the time he committed each offense from which he appealed. Therein, we held that other offenses committed in close proximity

were admissible to rebut the defense of insanity. We agree with the dissent in *Jamerson,* that these two cases should either be distinguished or overruled. Therefore, to the extent that these cases hold as an absolute rule that extraneous offenses are admissible to rebut a defense of insanity, they are overruled.

It is important to point out that we do *not* hold that extraneous offenses are never admissible to rebut a defensive theory of insanity. There may well be cases wherein such offenses may be probative of the presence or absence of sanity. However, the mere fact alone that other offenses were committed does not, by itself, tend to rebut a claim of insanity.

Since we find that the admission of the extraneous offenses in the instant case does not fall within any of the exceptions enunciated in *Albrecht v. State,* supra, we hold that the trial court erred in admitting them into evidence.

Although appellant's guilt of the offense was established overwhelmingly, we cannot conclude that this error was harmless to him on the issue of punishment.

Accordingly, the judgment is reversed and the cause remanded.