Sam R. SANDERS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 58904.

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 6, 1980.

Walter F. Splawn, Austin, for appellant.

Ronald D. Earle, Dist. Atty., and Bill White, Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

Appeal is taken from a conviction for murder upon which the jury assessed appellant's punishment at confinement for life.

The sufficiency of the evidence is not challenged. Appellant admitted by direct testimony to the essential facts proved by the State, and the only issue before the jury was whether at the time of the conduct charged, appellant, as a result of mental disease or defect, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law. V.T.C.A. Penal Code, § 8.01.

The salient facts adduced by the State established that on February 4, 1976, appellant entered Brackenridge Hospital complaining of stomach pains and requested of the clerk of the emergency room business office that he be given a shot of penicillin. Steve Lulenski, a nurse, was called and after speaking with appellant instructed the clerk to admit him as an emergency room patient. After a hospital orderly had taken appellant's pulse and blood pressure, appellant refused to have his temperature taken by a computerized thermometer. Lulenski attempted to explain to appellant that the thermometer was a new instrument which could provide a faster temperature reading and appellant became agitated, cursing Lulenski and continued to refuse to submit to its use. Lulenski told appellant that he would have to leave if he refused to have his temperature taken. Appellant then left the emergency room and was heard to say "I don't care. Just you put me in jail."

A few minutes later appellant returned to the emergency room with a shotgun and pointed it at Lulenski. The orderly distracted appellant from another door and when appellant swung the gun toward him, Lulenski asked appellant what he was doing, ordered him out and threw a stool at appellant which landed a few feet in front of him. Appellant swung the gun back toward Lulenski and fired, hitting Lulenski

in the heart, killing him. Appellant was then shot three times by a police officer.

Through the testimony of four psychiatrists, a psychologist and two lay witnesses, appellant raised the affirmative defense of insanity. The expert witnesses established appellant's lengthy history of schizophrenia, paranoid type, the recorded chronology of which extended from December of 1970 through the date of trial.

Upon cross examination of appellant's first expert witness, Dr. Oscar Yero, the prosecutor, referring to Yero's opinion based on a "hypothetical fact situation" posed by the defense, stated, "I want to add to that hypothetical . . . the fact that in '72 or '73 [sic] there is another murder and that individual that you saw on September 9, 1971–," whereupon an objection was voiced. Out of the jury's presence defense counsel asserted that the prosecutor's question was asked in violation of his motion in limine regarding extraneous offenses. The trial court ruled that the question was permissible so long as the State could substantiate the facts of the extraneous offense.[1]

Dr. Robert Sheldon, Superintendent of Rusk State Hospital, was the third psychiatrist called by the defense. Dr. Sheldon testified that he first saw appellant fourteen days after the murder and it was his diagnosis that appellant was schizophrenic, paranoid type. It was Sheldon's opinion that appellant was insane at the time of the offense. This opinion was based, in addition to Sheldon's personal observation of appellant, on a review of appellant's past psychiatric history on record at both the Austin State Hospital and Rusk State Hospital, the latter being where appellant was under commitment from November 9, 1971 until April 18, 1974.

On cross examination, the prosecutor asked Sheldon the reason for which appellant had been committed to Rusk in November of 1971. Over strenuous specific objection the court permitted Sheldon to reply:[2]

The patient was committed to the Rusk State Hospital maximum security unit as not guilty by reason of insanity and insane at the time of the trial which was in–for which the offense was the murder of his uncle.[3]

Appellant now contends that error attended the trial court's admission of the facts that he killed his uncle in 1971 and was found not guilty by reason of insanity. We agree and, accordingly, reverse.

█ It is an established general rule of evidence that proof of similar happenings, extraneous transactions or prior specific acts of misconduct committed by a party is irrelevant to the contested material issues in the case on trial and therefore inadmissible.[4]

---

1. The trial judge prefaced his ruling by stating:

    "The insanity law says that the term mental disease or defect does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct. * * * The State has the [defendant's] psychiatrist on cross examination on a hypothetical question and is asking him concerning repeated criminal acts, whether or not it would affect the doctor's determination that he did have such a mental disease or defect."

2. Stated the court:

    "The objection will be overruled, and I'll hold that is material and relevant under the question of insanity because it goes to the test of whether or not a person is suffering from mental disease who has an abnormality manifested by repeated criminal acts of otherwise antisocial conduct."

3. It was also ultimately brought out by the prosecution that appellant was discharged from Rusk on April 18, 1974 after a reviewing committee certified him as sane, and a Travis County jury thereafter reaffirmed such condition.

4. *Finley v. State*, 573 S.W.2d 238 (Tex.Cr.App. 1978); *Grayson v. State*, 481 S.W.2d 859 (Tex. Cr.App.1972); *Johnson v. State*, 418 S.W.2d 522 (Tex.Cr.App.1967); *Flores v. State*, 151 Tex.Cr.R. 478, 209 S.W.2d 168 (1948); *Stone v. State*, 147 Tex.Cr.R. 489, 182 S.W.2d 400 (1944); *Locke v. State*, 129 Tex.Cr.R. 432, 88 S.W.2d 110 (1936); *Dallas Ry. and Terminal Co. v. Farnsworth*, 148 Tex. 584, 227 S.W.2d 1017 (1950); *Swinney v. Winters*, 532 S.W.2d 396 (Tex.Civ.App. San Antonio, 1975, writ ref'd n.r.e.); *Davis v. Zapata Petroleum Co.*, 351 S.W.2d 916 (Tex.Civ.App. El Paso, 1961, writ ref'd n.r.e.).

In a criminal proceeding, when the extraneous or similar transaction committed by the accused, sought to be admitted by the State, constitutes a criminal offense, introduction of that "extraneous offense" transaction is inherently prejudicial because the accused is entitled to be tried on the accusation made in the State's charging instrument and therefore cannot be tried for some collateral crime of which he has no notice. *Jones v. State*, 568 S.W.2d 847 (Tex.Cr.App.1978); *Walls v. State*, 548 S.W.2d 38 (Tex.Cr.App.1977); *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953); *Couch v. State*, 155 Tex.Cr.R. 585, 238 S.W.2d 198 (1951). Furthermore, such introduction is inherently prejudicial because an accused's "propensity to commit crimes" is not an issue which is material to whether he is guilty of the specified conduct charged by the State; it follows therefore, that introduction of evidence establishing such a propensity constitutes a trial of the accused as a "criminal generally" which is prohibited. E.g., *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979); *Young*, supra; *Couch*, supra; *Clements v. State*, 147 Tex.Cr.R. 531, 182 S.W.2d 915 (1944); see *Spivey v. State*, 146 Tex.Cr.R. 11, 171 S.W.2d 140 (1943). See also *Jones*, supra; *Etchieson v. State*, 574 S.W.2d 753 (Tex.Cr.App.1978); *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App.1975); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

Extraneous transactions constituting offenses shown to have been committed by the accused [5] may become admissible upon a showing by the prosecution both that the transaction is *relevant* to a *material* issue in the case [6] and the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Holley v. State*, 582 S.W.2d 115 (Tex.Cr.App.1979); *Ruiz v. State*, 579 S.W.2d 206 (Tex.Cr.App.1979); *Jones*, supra.

Our threshold inquiry then is whether the fact that appellant killed his uncle in 1971 and was found not guilty by reason of insanity, tends to prove that appellant was sane at the time of the commission of the instant offense and thereby rebuts appellant's defensive theory.

Section 8.01(b), V.T.C.A. Penal Code provides that "[t]he term 'mental disease or defect' does not include an abnormality manifested *only* by repeated criminal or otherwise antisocial conduct." [7] The trial court, in admitting the evidence complained of, stated that it was relevant to this provision of the statutory definition of insanity. Apparently the trial court believed that because § 8.01(b) provides that an abnormality manifested by repeated criminal acts does *not* constitute *insanity*, proof of repeated criminal acts *necessarily* establishes *sanity*. This is clearly a misinterpretation of the statute.

Instead, § 8.01(b) clearly dictates that the *defense* cannot prove insanity by presenting evidence of *nothing other than* repeated criminal acts and otherwise antisocial conduct on the part of the accused. Here, appellant called five expert witnesses, all of whom testified that appellant's mental disability was schizophrenia, paranoid type; his illness was characterized as "severe," "acute," and requiring massive doses of anti–psychotic drugs continuously since its diagnosis in 1971, in order to render appellant's thought processes "reasonably stable." Thus, there was no attempt on the part of the defense to establish a mental defect solely by adducing evidence of appellant's repeated criminal acts. Accordingly, there was no material issue in this regard which was contested before the jury and, even if there had been, the fact that repeated commission of antisocial acts does

---

5. It is always required that the commission of the extraneous offense is clearly proved and the accused is shown to have been its perpetrator. *Ransom*, supra; see also 23 T.J.2d *Evidence* § 195 (1961).

6. *Coleman v. State*, 577 S.W.2d 695 (Tex.Cr.App.1978); *Buckner v. State*, 571 S.W.2d 519 (Tex.Cr.App.1978); *Finley*, supra; *Walls*, su-

pra; *Halliburton v. State*, 528 S.W.2d 216 (Tex.Cr.App.1975).

7. The jury was so instructed in the charge concerning appellant's affirmative defense of insanity. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

not prove insanity clearly does not lead to the conclusion that such conduct proves sanity. See *Holley v. State*, 582 S.W.2d 115 (Tex.Cr.App.1979).

The State nevertheless insists that the true justification for admission of the extraneous homicide transaction, was that it illustrated "appellant's knowledge that shooting an individual can result in commitment to a mental hospital rather than to prison, which . . . was appellant's motive for faking insanity." We agree that the complained of testimony would tend to show appellant's prior experience with the criminal justice system; we fail to see, however, in what way such experience would tend to lead to the conclusion that appellant was *in fact* "faking" insanity. Furthermore, even if the State conclusively established that appellant had been know to "fake" schizophrenic symptoms, we are un-

impressed that such a showing would to any degree tend to negate the defense that appellant was insane at the time of the murder of Steve Lulenski.[8]

■ We hold therefore, that neither appellant's prior experience with the criminal justice system, nor the *possibility* that he *could* "fake" symptoms of legal insanity was relevant to the material contested issue regarding appellant's ability to conform his conduct to the requirements of the law because of mental disease or defect, at the time he shot and killed the deceased. Cf. *Holley*, supra. Because the testimony complained of was irrelevant to the material issue joined by appellant's assertion of the defense of insanity, the trial court's admission thereof constituted reversible error.[9]

The judgment of conviction is reversed and this cause is remanded to the trial court.

---

8. In *Bruce v. Estelle*, 536 F.2d 1051 (5 Cir. 1976) the Circuit Court of Appeals in determining that the District Court's finding that the petitioner was merely an "antisocial personality" was clearly erroneous, noted that, because "true schizophrenics may also be fakers," an actual "attempt at deception could be viewed as a manifestation of [a] paranoid personality." The court concluded that a finding as a fact that petitioner Bruce had attempted "intentional falsification" of his responses during a psychiatric examination, offered no support for the conclusion that he was not a schizophrenic, paranoid type. Stated the court at 1060, "The only certainty is that . . . the ambivalence of the faking factor eliminates its utility in the . . . process" of balancing factors in order to determine whether "the underlying schizophrenic disorder were present."

In *Bruce*, unlike the case before us a psychiatrist testified that he had "detected intentional falsification in some of Bruce's responses when he conducted an hour long mental status examination of petitioner prior to the hearing."

In the instant case there was no opinion testimony offered to suggest the possibility that appellant was "faking" schizophrenia. Thus no issue in this regard was even before the jury.

9. We are unpersuaded by the State's contention on appeal that "appellant's objection did not specifically direct the trial court to delete from the witness' statement the *reason* for appellant's commitment" to Rusk State Hospital in 1971. It was upon the State's cross examination of Dr. Sheldon that he was specifically asked the "reason" for appellant's commitment, and defense counsel unsuccessfully

urged his motion in limine regarding extraneous offenses. The State concedes in its supplemental brief that "it was not so much the probative value of the offense itself that the State was eliciting, but *the probative value that the successful use of an insanity defense had to* the issue of appellant's feigning insanity for the instant cause."

Judging from the record of the State's final arguments in which appellant's prior successful assertion of the insanity defense and his subsequent release to "the streets" was specifically mentioned no less than five times, we agree that the value of the inadmissible evidence was indeed to convey to the jury the possible result of a verdict of not guilty by reason of insanity. This information, however, was clearly not aimed at bearing on appellant's "familiarity" with the criminal justice system in these regards, but rather was aimed at ensuring the jury panel's familiarity therewith by the time deliberations on guilt commenced.

The trial court's error in admitting the facts regarding appellant's 1971 successful assertion of the insanity defense and subsequent release in a collateral proceeding was severely compounded by these arguments which were without question calculated to distract the jury from the substantive issue involved in determining guilt or innocence. Cf. *McClure v. State*, 544 S.W.2d 390 (Tex.Cr.App.1976); *Martin v. Estelle*, 546 F.2d 177 (5 Cir. 1977); *Bruce v. Estelle*, 483 F.2d 1031 (5 Cir. 1973); cf. also *Brown v. State*, 530 S.W.2d 118 (Tex.Cr.App. 1975); and *Clanton v. State*, 528 S.W.2d 250 (Tex.Cr.App.1975).