*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★ ★

# OPINION

No. 04-07-00823-CR

Miguel **CHAVEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-0659
Honorable Mary Roman, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:       Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:   March 18, 2009

AFFIRMED

Miguel Chavez was charged by indictment with the offense of murder. A jury found Chavez guilty and the trial court sentenced him to 60 years imprisonment. Chavez appeals his conviction, arguing (1) the evidence was factually insufficient to support the verdict, and (2) the trial court erred in admitting evidence of his previous altercation with the victim. We affirm the trial court's judgment.

## FACTUAL SUFFICIENCY

When considering a factual sufficiency challenge, we look at the evidence in a neutral light giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the available evidence. *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Id.*

Chavez argues the evidence supporting his conviction was so weak that the verdict was clearly wrong and manifestly unjust, warranting reversal. Chavez points to the fact that no physical evidence or any eyewitness linked him to the murder, and therefore contends the circumstantial evidence presented by the State was too weak, rendering the verdict unjust. We disagree.

On the evening of August 28, 2004, Jesus Quintanilla visited his friend Manuel Cardona at Cardona's trailer. They were later joined by Angel Lowery. Lowery and Cardona lived in separate residences on Lowery's property, located in a rural area on Interstate 35 about a quarter-mile south of Shepherd Road. Sometime around 9:30 p.m., Chavez and his girlfriend arrived at Cardona's home. According to Lowery, Chavez approached Quintanilla and attempted to start a fight with him. Lowery testified Quintanilla seemed scared. Lowery told the jury Chavez began to hit Quintanilla, continuously striking him on his ear, yet Quintanilla did not make any effort to defend himself. Neither Lowery nor any of the other witnesses intervened because, according to Lowery, Chavez told

them "to mind [their] own business." Witnesses said Chavez beat Quintanilla for ten or twenty minutes, and after he stopped, Chavez told everyone he would give Quintanilla a ride home and then return with beer. Lowery testified that Chavez and Quintanilla got into the bed of a pick-up truck driven by Chavez's girlfriend and left around 10:00 p.m., but contrary to his statement Chavez never returned. Chavez later told Cardona that he left Quintanilla at "his house."

Roy Castillo testified he was driving down Shepherd Road around 10:00 p.m. when he noticed a body lying partly in the road. He called 911 and Bexar County Deputy Sheriff Bobby Garza was dispatched at 10:11 p.m. to respond to the scene, which was located a short distance from Lowery's property. When Deputy Garza arrived, paramedics, who reached the location before Deputy Garza, informed him that the person was dead. Deputy Garza testified there were obvious stab wounds on the body. Detective Charles Campbell, also with the Bexar County Sheriff's Department, testified the blood trails and abrasions on the body indicated the body was pushed from a moving vehicle. The medical examiner testified Quintanilla died from several stab wounds. She also stated the abrasions and contusions suffered by Quintanilla were consistent with being thrown from a moving vehicle. Both the medical examiner and Detective Campbell testified the injuries were inflicted fairly close to the time the body was found, as no bugs had collected on the dead body.

Lowery and Cardona also testified about Chavez's behavior following Quintanilla's death. Cardona testified that after the murder, Chavez pressured him to remain quiet. Lowery stated Chavez never visited him before the murder, but approximately three days after the murder, Chavez began to show up at Lowery's house several times a week. According to Lowery, Chavez said he was there to make sure Lowery kept his mouth shut. Chavez also told Lowery he knew where his brother lived, and Lowery better not say "anything." Lowery, concerned that Chavez would target

him and his family, decided to put a gate across the entrance to his property. A week or so after the murder, Lowery was installing the gate when Chavez arrived. Lowery testified that Chavez said a gate would not stop him; he would simply attach a chain to the gate and rip it out with his truck. During that encounter, Chavez asked Lowery three times to come with him to his girlfriend's mother's house and help him with repairs. Lowery testified he thought Chavez was trying to lure him from his home so he could "take care of" Lowery. Chavez left, but Lowery stated that later that same evening, Chavez returned and struck him in the face. Lowery fell backwards and saw Chavez attempting to open a pocketknife to stab him. Lowery, who had begun carrying a knife because of the perceived threats from Chavez, stabbed Chavez in the stomach. Chavez stopped his attack and left. Lowery moved after this incident and never saw Chavez again. Chavez had the wound treated and, when questioned by a deputy from the Bexar County Sheriff's Department, told the deputy "he fell down and hurt himself."

The jury also heard testimony about the relationship between Chavez and Quintanilla. Cardona testified that approximately two years before the murder, Chavez struck Quintanilla because Chavez was upset about a comment Quintanilla purportedly made about Chavez's sister-in-law. Cardona stated he and Chavez's girlfriend had to restrain Chavez to stop the attack. Cardona testified that Quintanilla later admitted he was afraid of Chavez. Frank Esparza, a supervisor where Chavez, Quintanilla, and Cardona used to work, testified Quintanilla came to work one day with a black eye. According to Esparza, Chavez said he beat up Quintanilla because Quintanilla made some sort of "gesture" towards Chavez's girlfriend.[1] Witnesses testified that after the beating Quintanilla was afraid of Chavez and avoided him.

---

[1] The State explained during a bench conference there was only one prior beating, but witnesses gave two different explanations for why it occurred. The State, however, never presented this information to the jury.

While no physical or eyewitness evidence links Chavez to the murder, there is extensive circumstantial evidence to support the jury's verdict. This evidence includes Chavez's attack on Quintanilla just before they left Lowery's property together; the very short time period between Chavez leaving with Quintanilla and the discovery of Quintanilla's body; the discovery of Quintanilla's body a short distance from Lowery's property; Chavez's threats towards those who witnessed the beating at Cardona's home; and the testimony about Chavez and Quintanilla's prior relationship. Viewing the evidence in a neutral light and giving deference to the jury's credibility determinations, we find the evidence supporting Chavez's conviction was not so weak that the verdict was clearly wrong and manifestly unjust, nor was the evidence supporting the verdict outweighed by the great weight and preponderance of the available evidence. *See Lancon*, 253 S.W.3d at 705. Accordingly, we overrule Chavez's first issue.

### RULE 403 AND RULE 404(B)

In two issues, Chavez contends the trial court erred in admitting Cardona's testimony regarding Chavez's prior relationship with Quintanilla. He argues the testimony was inadmissible under Texas Rules of Evidence 403 and 404(b).

We review the trial court's decision to admit the evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial judge's decision unless it is outside the zone of reasonable disagreement. *Id.*

Rule 403 provides relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. Rule 404(b) prohibits the use of extraneous bad acts to prove the defendant acted in conformity

therewith but allows the evidence if it is used "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." TEX. R. EVID. 404(b).  However, in murder cases, article 38.36(a) of the Texas Code of Criminal Procedure authorizes "testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."  TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon 2005).

The court of criminal appeals harmonized these provisions in *Garcia v. State*, holding that "[a]lthough Rules 403 and 404 limit the admissibility of some Article 38.36(a) relationship evidence, this does not mean that the statute and the Rules are in conflict with each other."  201 S.W.3d 695, 702 (Tex. Crim. App. 2006).  "[I]n cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible."  *Id*. at 703.  If the evidence of the relationship is material, the State may present such evidence under the "other purposes" clause of rule 404(b) because the evidence has a purpose other than showing bad character and the defendant acting in conformity therewith.  *Id*.

Chavez first argues the trial court erred in admitting evidence regarding his relationship with Quintanilla because it was introduced solely to prove Chavez had a propensity for violence, and that he acted in conformity with that propensity on the night of the murder.  *See* TEX. R. EVID. 404(b). We disagree.  The relationship between Chavez and Quintanilla, including testimony about the previous beating, was a material issue for consideration by the jury because it helped illustrate the nature of their relationship and possibly explained Quintanilla's fear of Chavez, his failure to defend

himself the night of the murder, and the reason he left with Chavez after the beating. *See, e.g., Garcia*, 201 S.W.3d at 703-04 (holding evidence that appellant had previously pushed victim out of vehicle several years before the victim's murder was admissible under rule 404(b) to illustrate nature of relationship); *Gipson v. State*, 82 S.W.3d 715, 722-23 (Tex. App.—Waco 2002, no pet.) (holding evidence that appellant committed previous acts of violence against victim was admissible to illustrate nature of relationship). Accordingly, the trial court did not err in admitting the evidence of the prior relationship between Chavez and Quintanilla over Chavez's rule 404(b) objection.

Chavez also argues that even if the evidence was admissible under rule 404(b), the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. He contends the evidence regarding his prior relationship with Quintanilla was prejudicial, impressing the jury in a way that was both irrational and unforgettable. We disagree.

Evidence otherwise admissible under article 38.36 and rule 404(b) may still be excluded under rule 403 if the appellant demonstrates the damaging nature of the evidence outweighs its probative value. *See Garcia*, 201 S.W.3d at 703-04; *Boone v. State*, 60 S.W.3d 231, 239 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "The purpose in excluding relevant evidence under Rule 403 is to prevent a jury that has a reasonable doubt of the defendant's guilt in the charged offense from convicting him anyway based solely on his criminal character or because he is generally a bad person." *Garcia*, 201 S.W.3d at 704. As previously discussed, the evidence Chavez complains of was relevant to illustrate the relationship between Chavez and Quintanilla. The evidence that Chavez beat Quintanilla in the past was no more inflammatory or prejudicial than the evidence that he beat Quintanilla on the night of the murder. Nothing in the record suggests the jury had a reasonable doubt that Chavez murdered Quintanilla, but convicted him based on the evidence

of the prior beating. *See Garcia*, 201 S.W.3d at 704. Accordingly we overrule Chavez's second and third issues.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Steven C. Hilbig, Justice

Publish