

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00220-CR

Gilbert **TELLO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2012CRN000013-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:          Rebeca C. Martinez, Justice
                   Beth Watkins, Justice
                   Liza A. Rodriguez, Justice (concurring in the judgment only)

Delivered and Filed: August 28, 2019

AFFIRMED

Appellant Gilbert Tello was convicted by a jury of murder. On appeal, he argues insufficient evidence supports the jury's rejection of his insanity defense. He also contends the trial court erred when it admitted evidence of a prior act of domestic violence over his objection. We affirm.

## BACKGROUND

In the fall of 2011, Tello and Marisella Flores were romantically involved, but their status as a couple appeared to fluctuate. On October 23, 2011, they had a heated argument at a

McDonald's near Flores's home. A few hours later, Tello shot Flores outside the front door of her home. Tello went into Flores's home immediately after the shooting to hug two of Flores's children and tell them they were all going to Mexico.[1] When officers responded to the shooting, they encountered Tello, who admitted he shot Flores because she "practices witchcraft." He then showed the officers where he had put the gun he used. He also told the officers he did not want the children to see their mother's body. The officers discovered Flores's body near the front door of her home.

Officers escorted Tello to the Laredo Police Station where he spoke with Detective Richard Reyes. While walking Tello to an interview room, Tello voluntarily told Detective Reyes that St. Michael had tasked him to rid the world of all evil.[2] Detective Reyes informed Tello of his *Miranda* rights, Tello invoked his right to an attorney, and Detective Reyes terminated the interview before asking any questions. Tello then asked Detective Reyes if he could go free if he killed Flores for "biblical reasons."

At trial, Tello did not contest whether he killed Flores. Rather, he claimed he was not guilty by reason of insanity. In presenting his insanity defense, the trial court admitted medical records into evidence showing his diagnoses of psychosis and paranoid delusions. Tello also called Dr. Michael Jumes and Dr. John Fabian as expert witnesses to testify that they believed Tello was legally insane at the time he committed the murder. The State called Dr. Timothy Proctor as a rebuttal expert witness. Dr. Proctor testified that, in his professional opinion, Tello was not legally insane at the time he committed the murder. The State also introduced evidence, over Tello's

---

[1] Although the record is not clear, it appears that the children who testified were also Tello's children.
[2] At trial, defense counsel asked Detective Reyes to read directly from his report from that night. Detective Reyes read to the jury that Tello said: "It's a biblical thing. You wouldn't understand. I killed [Flores] because she was the devil. I work for St. Michael, and he sent me to help rid the world of demons."

objection, of one instance of Tello's domestic violence against Flores. The jury rejected Tello's insanity defense and found him guilty of murder. He appeals.

## FACTUAL SUFFICIENCY

In his first issue, Tello claims the evidence is factually insufficient to support the jury's rejection of his affirmative defense of insanity.

### A. Standard of Review

"We review the factual sufficiency of evidence supporting an affirmative defense to determine whether, after considering all the evidence relevant to the issue, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Aschbacher v. State*, 61 S.W.3d 532, 535 (Tex. App.—San Antonio 2001, pet. ref'd) (citing *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990)); *see also Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013) ("In making a factual-sufficiency claim, the defendant is asserting that, considering the entire body of evidence, the jury's adverse finding on his affirmative defense was so 'against the great weight and preponderance' of that evidence to be manifestly unjust." (quoting *Meraz*, 785 S.W.2d at 154–55)). "In the factual-sufficiency review of a rejected affirmative defense, an appellate court views the entirety of the evidence in a neutral light, but it may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Matlock*, 392 S.W.3d at 671.

### B. Applicable Law

"To establish an insanity defense, the defendant must prove by a preponderance of the evidence that, at the time of the offense, he, as a result of severe mental disease or defect, did not know that his conduct was wrong." *Aschbacher*, 61 S.W.3d at 535; *see also* TEX. PENAL CODE ANN. § 8.01(a). "The issue [of insanity] is not strictly medical, and expert witnesses, although capable of giving testimony that may aid the jury in its determination of the [insanity] issue, are

not capable of dictating determination of that issue." *Graham v. State*, 566 S.W.2d 941, 949 (Tex. Crim. App. 1978). "Only the jury can join the non-medical components that must also be considered in deciding the ultimate issue" of insanity. *Id.* The jury "may consider the [defendant's] demeanor before and after the offense, any attempts to evade police or to conceal incriminating evidence, a person's expressions of regret or fear of the consequences of his or her actions, and possible motives for the offense." *Aschbacher*, 61 S.W.3d at 535. "Similarly, surrendering to the police and confessing to the crime may be indications of a realization that the person knew the charged conduct was wrong." *Id.*

## C. Analysis

Three months before Tello killed Flores, he was involuntarily committed at the Valley Baptist Medical Center. To support his insanity defense, Tello introduced excerpts of a "Physician's Certificate of Medical Examination for Temporary Commitment" from that commitment. That examination report, which was written by two different doctors, stated, "the patient appears psychotic and paranoid" at times but "alert and oriented" at other times. Tello also presented evidence of his involuntary commitment to the San Antonio State Hospital on October 13, 2011, ten days before he killed Flores. This involuntary commitment occurred after he contacted the FBI claiming "the Virgin Mary contacted him a week earlier, and that [she informed him] there was going to be an attack . . . on the world." At the San Antonio State Hospital, he was evaluated by two other psychiatrists who concluded "Tello had a new onset of psychosis with auditory hallucinations, paranoia, and grandiose delusions[,]" and diagnosed him "with an unspecified psychotic disorder."

At trial, Tello called Dr. Jumes, a court-appointed psychologist who conducted an insanity evaluation. After reviewing Tello's medical records and police reports of the incident and conducting two evaluation interviews, Dr. Jumes testified that it was his professional opinion,

"based on a reasonable degree of psychological certainty, that . . . Tello was laboring under a severe mental disease at the time of the conduct charged, and as a result, did not know that his conduct was wrong."[3] Dr. Jumes also attested that Tello's psychosis, combined with paranoia, could cause him to react to his hallucinations with violence. However, Dr. Jumes also conceded there were "some factors that would suggest [Tello's] awareness of wrongfulness" such as asking for an attorney instead of talking to the police and stating that he did not want the children to see the crime scene.

Tello also called Dr. John Fabian, a forensic psychologist. Dr. Fabian testified that he reviewed Tello's mental health history, police reports, witness statements, and prior doctor reports, and also interviewed Tello. Dr. Fabian stated it was his professional opinion that Tello met the legal definition of insanity with a reasonable degree of psychological certainty. Specifically, Dr. Fabian testified it was his opinion that Tello suffered from a schizoaffective disorder on the day he killed Flores. Dr. Fabian described schizoaffective disorder as schizophrenia—which could cause hallucinations—coupled with a loss of contact from reality. Dr. Fabian thought Tello's belief that Flores was a witch was a psychotic motive, and this psychotic motive caused Tello to believe his conduct was not wrong when he killed Flores. Dr. Fabian admitted, however, that Tello's desire to shield the children from the scene could indicate a guilty conscience.

The State called Dr. Timothy Proctor, a forensic psychologist and associate clinical professor at the University of Texas Southwestern Medical Center. Dr. Proctor testified that he reviewed the same documents Dr. Jumes and Dr. Fabian reviewed, and interviewed Tello. Dr. Proctor agreed that Tello suffered from a severe mental disease at the time of the offense, but testified it was his opinion that Tello knew his conduct was wrong at the time. To support his

---

[3] All three expert witnesses also reviewed various medical records regarding competency examinations that were conducted while Tello was awaiting trial.

conclusion, Dr. Proctor testified that Tello's comments about taking the children to Mexico indicated that Tello knew killing Flores was wrong. In addition, Dr. Proctor noted the argument between Tello and Flores shortly before he killed her, as well as the previous act of domestic violence after an argument, indicated Tello had a motive to kill Flores that was not psychotic.

The State introduced evidence of a single instance of Tello's prior domestic violence against Flores as well as evidence of an argument that occurred between Tello and Flores the day of the murder. The jury could have considered Tello's angry demeanor towards Flores following their argument a few hours before the murder in determining whether Tello had a non-psychotic motive for killing Flores. *See Aschbacher*, 61 S.W.3d at 535 (holding fact finder may consider defendant's demeanor before and after offense and possible motives for offense when assessing the issue of insanity). The jury also could have believed the children's testimony about Tello's attempt to evade the police by fleeing to Mexico and construed that as evidence Tello knew his conduct was wrong. *See id.* (authorizing jury to consider attempts to evade police when assessing the issue of insanity). In addition, it was within the jury's purview to determine whether Tello's attempts to shield the children from the crime scene and invoke his right to an attorney were expressions of regret or fear of the consequences for killing Flores. *See id.* (permitting jury to consider defendant's "expressions of regret or fear of the consequences of his or her actions"). The jury also could have found that Tello's concern that the children would see their mother's dead body tends to show that he knew it was wrong to kill Flores and wanted to shield the children from the results of his wrongdoing and that the act of surrendering to police and confessing to the crime as an indication that Tello knew killing Flores was wrong. *See id.* Finally, Tello asked Detective Reyes if he could go free if he said he killed Flores for biblical reasons, indicating that he was aware of the possibility of incarceration for his actions. The jury could have construed these actions as evidence that Tello had some inclination that killing Flores was wrong.

Although the consensus among Tello's experts was that he was unable to appreciate the wrongfulness of his conduct, Dr. Proctor concluded otherwise. It was the jury's task to resolve this conflict. Although we view the entirety of the evidence in a neutral light, we cannot usurp the function of the jury to assess the weight and credibility of the evidence. *See Matlock*, 392 S.W.3d at 671. Here, the record contains evidence that Tello knew the difference between right and wrong when he killed Flores. The jury reasonably relied on that evidence to reject Tello's legal insanity defense. Accordingly, we cannot say that the jury's decision to reject Tello's insanity defense is so against the great weight and preponderance of the evidence that it is manifestly unjust. *See id.*

We therefore overrule Tello's first issue.

### ADMISSIBILITY OF EVIDENCE

In his second issue, Tello argues the trial court erred when it allowed testimony about an incident of domestic violence between Tello and Flores approximately a year before Tello killed Flores. He argues the testimony was irrelevant because it was not material to the case and was therefore inadmissible under Texas Rules of Evidence 401 and 402. In the alternative, Tello argues the testimony was inadmissible under Rules 403 and 404(b) of the Texas Rules of Evidence.

*A. Standard of Review*

We review the trial court's decision to admit the evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial court's decision unless it is outside the zone of reasonable disagreement. *Id.*

*B. Applicable Law and Analysis*

*1. Rules 401 and 402*

In general, all relevant evidence is admissible unless prohibited by constitution, statute, the Texas Rules of Evidence, or any other rules promulgated by statute. TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without

the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401. In other words, the evidence must be relevant to a material issue in the case. *Garcia v. State*, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006). Whether an issue is material depends on the theories of the prosecution and defense. *Id.*

In murder cases, the relationship between the victim and the accused is a material issue. *Id.* Evidence of "prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship." *Id.* at 702. Specifically, Article 38.36(a) of the Texas Code of Criminal Procedure authorizes "testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.36(a). In assessing the issue of insanity, a fact finder may consider possible motives for the offense. *Aschbacher*, 61 S.W.3d at 535 (discussing a non-exhaustive list of factors fact finder may consider in assessing insanity).

To support his relevance argument, Tello cites *Sanders v. State*, 604 S.W.2d 108 (Tex. Crim. App. [panel op.] 1980). *Sanders*, however, is distinguishable from the instant case. In *Sanders*, the State attempted to introduce evidence that the defendant had previously committed another homicide and had been found not guilty by reason of insanity. *Sanders*, 604 S.W.2d at 110. The State claimed this evidence showed the defendant had a reason to "fake" insanity in the later case in an effort to be committed to a mental hospital rather than prison if he were found not guilty by reason of insanity. *Id.* at 111–12. The Texas Court of Criminal Appeals rejected that argument, concluding "even if the State conclusively established that appellant had been know[n] to 'fake' schizophrenic symptoms, we are unimpressed that such a showing would to any degree

tend to negate the defense that appellant was insane at the time of the [second] murder . . . ." *Id.* at 112.

In *Sanders*, the State contended the defendant's previous experience with the criminal justice system was relevant to his motive for faking insanity, not to his motive for committing the crime. *See id.* In contrast, here, the State introduced evidence of the domestic violence as evidence that Tello had a non-psychotic motive for committing the crime. The State contends Tello's previous reaction to a heated argument with Flores—choking her, not in a psychotic episode, but out of anger—provided an alternative, non-psychotic motive for his violence against her after the heated argument at the McDonald's.

This evidence is material and authorized under article 38.36 because it illustrates the nature of Tello's relationship with Flores—one that included domestic violence. *See* TEX. CODE CRIM. PROC. art. 30.36(a); *Garcia*, 201 S.W.3d at 702–03. This evidence also rebuts Tello's insanity defense by showing that he had a history that included violent conduct toward Flores, making it more likely he had a motive to kill her. This court reviewed this issue thirty years ago, and wrote:

> An accused cannot be permitted to claim a certain condition of his mind at the time of the offense which he claims exonerates him, and also prevent the State the opportunity to show an opposite view of the condition of the accused's mind at the time of the offense, which may convict him.

*Gonzales v. State*, 775 S.W.2d 776, 779 (Tex. App.—San Antonio 1989, writ ref'd). We agree that Tello should not be permitted to put his mental state at issue and simultaneously prevent the State from presenting conflicting evidence about his mental state at the time he killed Flores.

As in *Gonzales*, the trial court here could have believed that this evidence showed Tello had a non-psychotic, anger-based motive for killing Flores after their heated argument at the McDonald's. *See id.* The trial court could have also concluded that the State did not offer this evidence to show that Tello acted in conformity with a character for violence because Tello did

not deny that he killed Flores. Tello's motive in killing Flores was relevant to the jury's determination of whether Tello knew his conduct was wrong at the time. Accordingly, we cannot say that this decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

### 2. Rules 403 and 404(b)

A trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. Rule 404(b) prohibits the use of prior bad acts to prove the defendant acted in conformity therewith, but allows that evidence to be used "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). The court of criminal appeals succinctly harmonized these provisions with article 38.36 in *Garcia v. State*, where it wrote:

> [A]lthough Rules 403 and 404 limit the admissibility of some Article 38.36(a) relationship evidence, this does not mean that the statute and the Rules are in conflict with each other. It simply means that the State is prohibited from presenting evidence if the probative value is substantially outweighed by unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. The State is also prohibited from presenting evidence for the sole purpose of showing that the accused acted in conformity with his bad character and murdered the victim. While Rule 404(b) limits the admissibility of specific acts used to show only the defendant's character, and may keep a prosecutor from trying the case not on the charged offense but on the past acts of the accused, it certainly does not block the admission of all relationship evidence.

201 S.W.3d at 695.

Tello first argues the testimony was introduced solely to prove he had a propensity for violence, and that he acted in conformity with that propensity on the day of the murder. As discussed above, the nature of Tello and Flores's relationship was material to the case and Tello's

motive for killing Flores was a factor the jury needed to consider in assessing whether Tello knew killing Flores was wrong. *See Garcia*, 201 S.W.3d at 702–03; *Aschbacher*, 61 S.W.3d at 535. Accordingly, we cannot say that the trial court abused its discretion in admitting evidence of the domestic violence between Tello and Flores over Tello's Rule 404(b) objection. *See Chavez v. State*, 399 S.W.3d 168, 172 (Tex. App.—San Antonio 2009, no pet.).

Finally, Tello argues that even if the evidence was admissible under Rule 404(b), the probative value of the domestic violence evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. "Evidence otherwise admissible under article 38.36 and rule 404(b) may still be excluded under rule 403 if the appellant demonstrates the damaging nature of the evidence outweighs its probative value." *Chavez*, 399 S.W.3d at 173 (citing *Garcia*, 201 S.W.3d at 703–04). "The purpose in excluding relevant evidence under Rule 403 is to prevent a jury that has a reasonable doubt of the defendant's guilt in the charged offense from convicting him anyway based solely on his criminal character or because he is generally a bad person." *Garcia*, 201 S.W.3d at 704. As previously discussed, the prior act of domestic violence was relevant in assessing a material issue in the case and whether Tello had a motive to kill Flores. Nothing in the record suggests the jury had a reasonable doubt that Tello murdered Flores—or that he lacked the mental capacity to commit murder—but convicted him based on the evidence of the prior domestic violence. *See Chavez*, 399 S.W.3d at 173. The trial court's ruling under Rule 403 was not outside the zone of reasonable disagreement. *See Cameron*, 241 S.W.3d at 19. Accordingly, we cannot say that the trial court abused its discretion in admitting the prior act of domestic violence. *See McDonald*, 179 S.W.3d at 576.

Therefore, we overrule Tello's second issue.

## CONCLUSION

The judgment of the trial court is affirmed.

Beth Watkins, Justice

DO NOT PUBLISH