# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00784-CR

**James Allen Brickley, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 426TH DISTRICT COURT OF BELL COUNTY
### NO. 77174, THE HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## O P I N I O N

James Allen Brickley was convicted of two counts of aggravated sexual assault and sentenced to thirty-five years' imprisonment for both offenses. *See* Tex. Penal Code §§ 12.32, 22.021. In two issues on appeal, Brickley challenges the sufficiency of the evidence regarding whether a deadly weapon was used or exhibited during the offenses and asserts that the trial court erred by overruling his objection to the admission of evidence of a prior extraneous incident between him and the victim. We will affirm the trial court's judgments of conviction.

## BACKGROUND

Brickley and C.M. had an off-and-on dating relationship for several years, and they ultimately had a child together. One day while they were at C.M.'s home, Brickley and C.M. had sexual intercourse during which Brickley accused her of saying another man's name. An argument ensued, and Brickley left the house. The pair continued to argue over the phone

and through text messages for several hours. During this exchange, C.M. drove her children to a friend's house and then returned home.

After C.M. returned home, she heard a noise in the house, went to investigate, and saw Brickley coming into her house through the kitchen window. When Brickley entered the home, he chased C.M., took her phone, held her arm behind her back, and punched her while accusing her of cheating on him. Next, Brickley went to the kitchen, grabbed a knife, approached C.M. with the knife, and told her that he would "cut [her] fucking head off." Brickley told C.M. that if she moved, he would kill her and then handed her the knife. C.M. threw the knife under her bed. Brickley told C.M. to find some tape, and C.M. found a roll of packing tape in the closet and handed it to him. Brickley taped C.M.'s hands behind her back, taped her mouth, and placed tape around her neck. Brickley also grabbed bootlaces and tied C.M.'s hands.

When Brickley finished taping C.M.'s body, he led her to her car, told her to sit on the floor of the car, drove her to a creek, and forced her out of the car by pulling the tape around her neck and leading her like "a dog," which choked her. Once they walked away from the car, Brickley picked up a rock, told C.M. to get on her knees, ordered her to perform oral sex on him, told her to turn around and bend over, and inserted his penis into her vagina. After Brickley ejaculated, he choked C.M., picked up a rock, and ordered her to place her head on top of a rock on the ground. After being told to place her head on the rock, C.M. begged Brickley not to kill her, and he dropped the rock that he was holding and told her to walk back to the car. Brickley drove back to C.M.'s home and told her to take a shower and then go to her friend's house to pick up the children. After driving to her friend's house, C.M. told her friend what happened, and her friend called the police.

When the police arrived at C.M.'s friend's home, they took a statement from C.M., drove to C.M.'s home to investigate the scene, and drove to the creek to look for evidence. At C.M.'s home, the police found packing tape with hair on it, bootlaces, and a knife under her bed. The police discovered that the screen to C.M.'s kitchen window had been removed. At the creek, the police found C.M.'s underwear. During their investigation, the police arranged for C.M. to have a sexual-assault-forensic exam. The police ultimately arrested Brickley, and he was charged with two counts of aggravated sexual assault for inserting his penis into C.M.'s mouth and vagina without her consent while using or exhibiting a deadly weapon.

At the trial, C.M., her friend, several law-enforcement officers, the sexual-assault-nurse examiner ("SANE"), and a forensic scientist all testified. In her testimony, the SANE related the description of the events C.M. gave during the exam and discussed injuries to C.M.'s wrists, abdomen, finger, forearms, back, elbow, legs, lips, and neck. The forensic scientist testified that testing performed on the tampon that C.M. was wearing during the assault produced a DNA profile that was consistent with Brickley's DNA.

After considering the evidence presented at trial, the jury convicted Brickley of both counts of aggravated sexual assault. Brickley appeals both of the trial court's judgments of conviction.

**DISCUSSION**

In his first issue on appeal, Brickley challenges the sufficiency of the evidence supporting his convictions. In his second issue, Brickley contends that the trial court erred by denying his objection to C.M.'s testimony describing a prior incident of abuse.

3

**Sufficiency of the Evidence**

In challenging the sufficiency of the evidence, Brickley does not assert that there was insufficient evidence establishing that he intentionally or knowingly penetrated C.M.'s sexual organ and mouth with his sexual organ and without her consent; instead, Brickley argues that the evidence presented in this case was insufficient to establish that he used or exhibited a deadly weapon during the offense. More specifically, Brickley contends that both counts of the indictment in this case alleged that he "used or exhibited a deadly weapon, to-wit: a knife and a rock." Accordingly, Brickley argues that to be convicted under either count, the jury had to "definitively and distinctively" find that he used or exhibited a knife *and* a rock and that they were both deadly weapons. Moreover, although Brickley acknowledges that C.M. testified that he used "a large stone" during the assault and that one of the investigating officers explained that a large rock is capable of causing serious bodily injury or death, Brickley highlights that C.M. never identified a particular rock from the creek bed as the one used during the assaults and that the State never produced the actual rock at trial. For these reasons, Brickley urges that the evidence was insufficient "[b]ecause the State failed to prove a rock in this case was a deadly weapon."

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id*. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id*. "Juries can draw reasonable inferences from the evidence so long as each

4

inference is supported by the evidence produced at trial," *id*., and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the Penal Code, an individual commits aggravated sexual assault if he intentionally or knowingly "causes the penetration of the . . . sexual organ of another person by

any means" or "the mouth of another person by the sexual organ of the actor, without that person's consent" and "uses or exhibits a deadly weapon in the course of the same criminal episode." Tex. Penal Code § 22.021(a)(1)(A)(i)-(ii), (a)(2)(A)(iv). "For purposes of aggravated sexual assault, a 'criminal episode' begins when the attacker in any way restricts the victim's freedom of movement and it ends with the final release or escape of the victim from the attacker's control." *Yates v. State*, 370 S.W.3d 772, 774 (Tex. App.—Texarkana 2012, pet. ref'd). "[T]he use or exhibition of a weapon at *any time* during this period will elevate the crime to" aggravated sexual assault. *Burns v. State*, 728 S.W.2d 114, 116 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Accordingly, the evidence need not establish that the defendant used or exhibited the deadly weapon "during the actual sexual assault itself." *See Yates*, 370 S.W.3d at 774.

The legislature has defined "[d]eadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). "'Bodily injury' means physical pain, illness, or any impairment of physical condition," and "'[s]erious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(8), (46).

Although Brickley correctly points out that the language of the indictment stated that he used or exhibited "a knife and a rock," the jury charge was written in the disjunctive and instructed the jury to consider whether he "used or exhibited a deadly weapon, to-wit: a knife or a rock." Even if an indictment alleges "differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive." *Kitchens v. State*,

6

823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *see also Jordan v. State*, No. 05-18-01118-CR, 2020 WL 415934, at *2 (Tex. App.—Dallas Jan. 27, 2020, pet. ref'd) (mem. op., not designated for publication) (noting that "[i]t has long been held that, when the State alleges differing methods of committing an offense in the conjunctive, it is proper for the jury to be charged in the disjunctive"). Further, "[i]t is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted." *Kitchens*, 823 S.W.2d at 258. Accordingly, in this case, the evidence pertaining to Brickley's alleged use or exhibition of a deadly weapon is sufficient provided that it shows that he used or exhibited a knife or a rock and that the object used or exhibited was a deadly weapon. *See Guevara v. State*, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004) (observing that if "multiple theories are submitted to the jury, the evidence is sufficient to support a conviction so long as the evidence is sufficient to support a conviction for one of the theories submitted to the jury"); *see also Shelton v. State*, No. 12-15-00305-CR, 2016 WL 3950946, at *3 (Tex. App.—Tyler July 20, 2016, no pet.) (mem. op., not designated for publication) (providing that "when the state alleges more than one deadly weapon theory, we will uphold an affirmative deadly weapon finding if the evidence proves any of the alleged theories").

We note that Brickley limits his sufficiency challenge to the evidence pertaining to the rock and does not argue that the evidence was insufficient to establish that he used or exhibited a knife and that the knife was a deadly weapon. "Normally, an appellate court will refrain from conducting a sufficiency of the evidence review when the defendant fails to attack all theories of conviction submitted alternatively to the jury." *Vallado v. State*, 350 S.W.3d 257, 260 (Tex. App.—San Antonio 2011, pet. ref'd). However, because the alleged insufficiency of

7

the evidence pertaining to the rock frames a subsidiary issue presented by Brickley, we will address in the interests of justice whether the evidence is sufficient to support the jury's deadly weapon finding under the rock theory of conviction. *See id.*

"While a rock is not a deadly weapon *per se*, a rock can be a deadly weapon if the manner of its use or intended use is capable of causing death or serious bodily injury." *Stuckwisch v. State*, No. 08-16-00098-CR, 2017 WL 3725811, at *4 (Tex. App.—El Paso Aug. 30, 2017, no pet.) (op., not designated for publication); *see also Faircloth v. State*, No. 03-12-00133-CR, 2013 WL 2395194, at *5 (Tex. App.—Austin May 30, 2013, pet. ref'd) (mem. op., not designated for publication) (explaining that "a rational fact-finder could have found that appellant used or intended to use the rock in such a manner that it would be capable of causing serious bodily injury or death"). When deciding whether an object is capable of causing death or serious bodily injury, courts should consider the following: "(1) physical proximity between the victim and the object; (2) the threats or words used by the defendant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious bodily injury; (5) the manner in which the defendant used the weapon; and (6) the nature of the wounds inflicted." *Faircloth*, 2013 WL 2395194, at *4.

Although "the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used," *Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008), "[w]ounds need not be inflicted before" an object "can be determined to be a deadly weapon," *see Rodriguez v. State*, No. 06-03-00161-CR, 2004 WL 1243168, at *4 (Tex. App.—Texarkana June 8, 2004, no pet.) (op., not designated for publication). Additionally, "[e]xpert testimony is not required" to prove that an object is a deadly weapon. *See Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.). The State is not required

8

to prove "that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). "The placement of the word 'capable' in the provision allows the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *Id.*

During the trial, C.M. testified that after Brickley broke into her house and drove her to the creek, he told her that he was going to bury her with construction equipment to which he had access after he killed her. C.M. also explained that Brickley picked up a big rock before ordering her to perform oral sex on him and then inserting his penis into her vagina. Additionally, C.M. stated that after Brickley ejaculated, he choked her, picked the rock back up while she was on her knees, and told her to put her head on a platform-shaped rock on the ground. Further, C.M. testified that Brickley set the rock down after she begged him not to kill her. Similarly, the SANE testified that C.M. stated during the forensic exam that Brickley told her to put her head on a rock after the sexual assault and threatened to bash her "head in and kill" her. *Cf. Herbert v. State*, 631 S.W.2d 585, 585-87 (Tex. App.—El Paso 1982, no pet.) (explaining that evidence showing that defendant held knife to wife's throat while uttering "a specific threat to kill" and showing that knife had been used to cut orange earlier supported jury's determination that defendant used or exhibited deadly weapon). Moreover, a photograph of the platform-shaped rock was admitted into evidence as an exhibit, and one of the investigating officers explained that there were lots of rocks in the creek area and that the rock depicted in the photograph was something that was capable of causing serious bodily injury or death if Brickley bashed C.M.'s head with another rock while her head was on the platform-shaped rock.

9

From this evidence, the jury could have reasonably concluded that Brickley used or exhibited a rock and that the rock was a deadly weapon. *See Stuckwisch*, 2017 WL 3725811, at *1, *4 (determining that evidence was sufficient to establish that defendant used rock as deadly weapon during assault where victim testified about assault, where witness described defendant holding brick-sized rock over victim, where investigating officer discussed rocks found at scene, and where photographs of rocks at scene were admitted into evidence); *Taylor v. State*, No. 05-06-00844-CR, 2007 WL 1806839, at *2 (Tex. App.—Dallas June 25, 2007, pet. ref'd) (op., not designated for publication) (concluding that evidence was sufficient to support finding that rock was deadly weapon even though no rock was admitted into evidence at trial where officer explained that rock can be used as deadly weapon and where victim described rock that defendant held in his hand while demanding her purse and testified that she was afraid that defendant "was going to 'smash' her in the head with the rock"); *see also Billey v. State*, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref'd) (finding sufficient evidence to support determination that knife was deadly weapon where defendant's gestures with knife "carried an implied . . . threat . . . that he *would* use the knife to inflict serious bodily injury or death" if victim did not cooperate).

To the extent that the evidence might not clearly establish whether Brickley used or exhibited the deadly weapon during the sexual assaults, we note that C.M. explained that Brickley broke into her home, physically assaulted her, ordered her to sit on the floor, threatened her with a knife, and threatened to kill her. Further, C.M. related that Brickley taped her hands behind her back, placed bootlaces around her hands, applied tape to her neck, ordered her to go to the car, used the tape to lead her around, choked her, drove her to the creek, threatened to kill her and bury her body, picked up a rock before sexually assaulting her at the creek, picked

10

up the rock after the assault and told her to place her head on a platform-shaped rock on the ground, dropped the rock after she begged him not to kill her, and then drove her back to her home before leaving.

From this evidence, the jury could have reasonably concluded that the criminal episode began when Brickley broke into C.M.'s home and did not end until after he drove her home from the creek. *See Yates*, 370 S.W.3d at 774. Further, the jury could have reasonably inferred that Brickley used or exhibited the rock during this criminal episode. *Cf. Quincy v. State*, 304 S.W.3d 489, 497-98 (Tex. App.—Amarillo 2009, no pet.) (determining that evidence was sufficient to establish that sexual contact occurred in same criminal episode as assaultive conduct where evidence showed that defendant restricted victim's movement by placing his hands around her neck, where victim was not able to escape until hours later, and where sexual assault occurred within that time period).

Accordingly, we conclude that the evidence was sufficient to establish that Brickley used or exhibited a rock during the same criminal episode in which the sexual assaults occurred and that the rock was a deadly weapon. Having determined that there was sufficient evidence to support one of the State's deadly-weapon theories, we need not address whether the evidence was sufficient to support a determination that Brickley used or exhibited a knife and that the knife was a deadly weapon.

Although Brickley's first issue primarily focuses on a sufficiency challenge, Brickley also seems to assert in this issue that there was an error in the jury charge. *See Davidson v. State*, 249 S.W.3d 709, 717 n.2 (Tex. App.—Austin 2008, pet. ref'd) (explaining that issue containing "more than one specific ground of error is a multifarious one" and that appellate courts "may refuse to consider it"). After referencing the portion of the jury charge

11

allowing the jury to convict him if it determined that he used or exhibited a knife or a rock as a deadly weapon, Brickley again asserts that the evidence was insufficient to support a determination that he used or exhibited a rock as a deadly weapon and surmises that some members of the jury may have rested their verdict on the rock-as-a-deadly-weapon theory resulting in a non-unanimous and impermissible verdict.

To the extent that Bickley has raised a jury-charge issue, we note that although members of a jury must unanimously agree "that the defendant committed the same, single, specific criminal act," they do not have to agree "'upon a single means of commission.'" *Ngo v. State*, 175 S.W.3d 738, 745, 746 (Tex. Crim. App. 2005) (quoting *Schad v. Arizona*, 501 U.S. 624, 631 (1991)); *see also Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (explaining that jury is not required to unanimously agree "on the alternate modes or means of commission" of offense (quoting *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006))). Here, the jury had to agree that Brickley "used or exhibited a deadly weapon," but the jury did not need "to unanimously agree on which weapon was used." *Jordan*, 2020 WL 415934, at \*2; *see Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, pet. ref'd) (addressing jury-charge issue and explaining that jury charge did not have to require that jury agree which weapon was used or exhibited); *see also Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (stating that unanimity requirement does not mean "that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act"); *Degraffinried v. State*, No. 05-16-01359-CR, 2018 WL 3598953, at \*4 (Tex. App.—Dallas July 27, 2018, pet. ref'd) (mem. op., not designated for publication) (stating that "it was not necessary for the jurors to unanimously agree whether the deadly weapon was a motor vehicle or a firearm").

12

Moreover, as explained above, the evidence presented at trial was sufficient to establish that Brickley used or exhibited a rock as a deadly weapon, and he does not challenge the sufficiency of the evidence establishing that he used or exhibited a knife as a deadly weapon. *See Jordan*, 2020 WL 415934, at *2 (overruling jury-unanimity argument asserting that charge improperly allowed jury to disagree about type of deadly weapon used, noting that jury did not need to agree regarding which weapon was used, and observing that defendant did not "dispute that both" knife and gun "were deadly weapons under the facts of this case").

For all of these reasons, we overrule Brickley's first issue on appeal.

**Rule 403**

In his second issue on appeal, Brickley contends that the trial court erred by admitting evidence regarding a prior incident between C.M. and him. The evidence in question was admitted at the beginning of C.M.'s testimony, and the trial court convened a hearing outside the presence of the jury to address the admissibility of the evidence. During the hearing, C.M. testified that before the charged offenses, Brickley accused her of being in a sexual relationship with one of her female friends, texted the friend while pretending to be C.M. to confirm the affair, and held her at gunpoint while he texted the friend. Although C.M. was not sure when this incident occurred, she estimated that it was between seven months and two years before the charged offenses. At the hearing, Brickley objected to the testimony as being "very prejudicial" to him, but the trial court overruled the objection and allowed C.M. to testify about the incident. During the hearing and later during the trial, Brickley testified regarding two other incidents of abuse, but Brickley did not object to that testimony.

13

On appeal, Brickley contends the trial court should have sustained his objection under Rule of Evidence 403 because the danger of unfair prejudice substantially outweighed the probative value of the evidence. *See* Tex. R. Evid. 403. More specifically, Brickley contends that nothing in C.M.'s testimony describing the prior offense "made any fact of consequence in the charged offense more or less probable" but "had a great potential to impress the jury that sexual assault occurred here per the charged offenses simply because an accusation of infidelity had been made in the past accompanied by the exhibition of a firearm." Moreover, Brickley contends that the State did not need this evidence because the jury was able to observe C.M.'s testimony about the charged offenses. Similarly, Brickley argues that the State did not need the evidence to explain the nature of the relationship between C.M. and him because her testimony adequately described the dynamics of the relationship.[1]

Under the Rules of Evidence, "[r]elevant evidence is admissible unless" provided otherwise by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," and evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." *Id.* R. 401, 402. However, Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a

---

[1] In his brief, Brickley seems to argue that the evidence also should have been excluded under Rule of Evidence 404, which generally prohibits the admission of evidence regarding prior offenses or bad acts unless the evidence is relevant to a non-character-conforming purpose. *See* Tex. R. Evid. 404. However, Brickley did not present that argument to the trial court. *See* Tex. R. App. P. 33.1 (setting out requirements for preserving issue for appellate consideration); *Benitez v. State*, No. 01-10-00684-CR, 2011 WL 6306643, at *5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2011, no pet.) (mem. op., not designated for publication) (concluding that objection that evidence was "too prejudicial" did not preserve issue addressing Rule 404(b)); *Russo v. State*, 228 S.W.3d 779, 796-97 (Tex. App.—Austin 2007, pet. ref'd) (determining that defendant did not preserve argument under Rule 404 because "there was no objection on the basis of Rule 404(b)").

14

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted). Moreover, reviewing courts should afford trial courts a high level of deference regarding admissibility determinations under Rule 403. *See Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd).

Although this is not an exhaustive list, courts generally balance the following factors when performing a Rule 403 analysis: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *see Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). In this context, "probative value" refers to how strongly evidence makes the existence of a "fact of consequence" "more or less probable" and to how much the proponent needs the evidence and that "unfair prejudice" refers to how likely it is that the evidence might result in a decision made on an "improper basis," including "an emotional one." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)).

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Before the trial court made its ruling, C.M.'s friend testified that C.M. seemed to be afraid of Brickley before the incident and that he always needed to know where C.M. was, but the friend did not discuss any prior incidents of abuse. Moreover, the friend explained that after C.M. stated on the night in question that Brickley had physically and sexually assaulted her, C.M. did not want to call the police to report the incident and told the friend that she was afraid Brickley would hurt them if they called the police. Additionally, the friend explained that she was the one who had to call the police and that she handed the phone to C.M. after briefly talking with the police. Similarly, one of the investigating police officers testified that C.M. was hesitant to report what happened. Further, another officer testified that C.M. stated that Brickley handed her the knife after initially brandishing it and that she submitted to Brickley's demand that she retrieve tape from a closet after he had relinquished the weapon.

16

As the State notes, article 38.371 of the Code of Criminal Procedure provides that "testimony or evidence regarding the nature of the relationship between the actor and the alleged victim" is admissible in cases in which the victim and the defendant are in a relationship described by the Family Code. *See* Tex. Code Crim. Proc. art. 38.371. In light of the testimony above, the evidence regarding a prior incident of abuse similarly motivated by jealousy and involving use of a deadly weapon was probative because it contextualized the nature of the relationship between Brickley and C.M. and helped explain some of her conduct during the incident and her hesitancy in reporting the offense. *See Fernandez v. State*, 597 S.W.3d 546, 566 (Tex. App.—El Paso 2020, pet. ref'd); *see also Chavez v. State*, 399 S.W.3d 168, 173 (Tex. App.—San Antonio 2009, no pet.) (stating that evidence about relationship between defendant and victim "was a material issue for consideration by the jury because it helped illustrate the nature of their relationship and possibly explained" victim's fear of defendant, failure to defend himself, and decision to leave with defendant after assault); *Brock v. State*, 275 S.W.3d 586, 589, 590 (Tex. App.—Amarillo 2008, pet. ref'd) (reviewing trial court's decision to admit evidence showing tumultuous relationship between defendant and victim and concluding that trial court did not abuse its discretion by determining that "the challenged evidence had probative force to explain the relationship between appellant and his wife, and how that relationship motivated her murder").

Although C.M. explained that she did not know precisely when the prior incident occurred and estimated that it occurred between seven months and two years before the incident in question, *see Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd) (explaining that remoteness reduces probative value of extraneous offense "because, logically, the passage of time allows things and people to change"), courts have found that similar lapses

17

in time did not deplete the probative value of the evidence, *see, e.g., Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985) (concluding that four-to-six-month lapse in time was sufficiently small for extraneous offense to have probative value); *Corley v. State*, 987 S.W.2d 615, 617, 621 (Tex. App.—Austin 1999, no pet.) (concluding that crime that occurred thirteen years before trial was not too remote).  Moreover, as mentioned above, C.M. described during the hearing two other instances of domestic abuse occurring between the gun incident and the charged offenses, and Brickley did not object to the testimony regarding those two incidents.  Evidence showing a "continuing course of conduct" can militate against a finding that an extraneous offense was too remote to be probative.  *See Clarke v. State*, 785 S.W.2d 860, 866 (Tex. App.—Fort Worth 1990), *aff'd*, 811 S.W.2d 99 (Tex. Crim. App. 1991).

For these reasons, the trial court could have determined that the probative value of the prior incident weighed in favor of admission.

Turning to the potential for the evidence to impress the jury in some irrational way, we note that the trial court included in the jury charge an instruction directing the jury that it may consider evidence regarding extraneous offenses only if they first found beyond a reasonable doubt that Brickley committed the offenses and only for limited non-character-conforming purposes.  *See Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that "the impermissible inference can be minimized through a limiting instruction").  Further, the testimony did not address a complex subject matter and addressed a self-contained act.  *See Gigliobianco*, 210 S.W.3d at 641 (explaining that scientific evidence is type of evidence that might mislead jury not properly equipped to consider probative value).

Given the preceding, the trial court could have reasonably determined that the evidence would not impress the jury in an irrational manner and that this factor weighed in favor of admission.

Regarding the time needed to develop the evidence, we note that the guilt-innocence phase of the trial was held over three days, that the record for those three days is hundreds of pages in length, and that the testimony regarding the extraneous offense took up fewer than five pages. *See Robisheaux*, 483 S.W.3d at 221 (finding this factor weighed in favor of admission where evidence regarding extraneous offense came in though one witness, where guilt-innocence phase lasted three days, and where testimony about extraneous offense "was only eight pages long"); *see also Mcree v. State*, No. 03-17-00021-CR, 2018 WL 1547278, at *12 (Tex. App.—Austin Mar. 30, 2018, pet. ref'd) (mem. op., not designated for publication) (determining that trial court could have found that time factor either weighed in favor of admission or was neutral regarding admission of extraneous-offense evidence where testimony about extraneous offense took up 93 pages out of 500-page record).

Accordingly, the trial court could have reasonably concluded that the time factor weighed heavily in favor of admission.

Finally, turning to the State's need for the evidence, we note that in deciding whether the evidence was needed, courts should consider whether the proponent had other evidence to establish the fact of consequence, how strong the other evidence was, and whether the "fact of consequence related to an issue that is in dispute." *See Erazo v. State*, 144 S.W.3d 487, 495-96 (Tex. Crim. App. 2004). As discussed above, the extraneous-offense evidence helped to contextualize the relationship between C.M. and Brickley and to explain some of her actions during the incident as well as her initial reluctance to have the police involved. Moreover,

19

although several witnesses testified before the evidence at issue was admitted, those witnesses did not describe incidents of prior abuse.

Although C.M. described outside the presence of the jury two other incidents of domestic abuse to which Brickley did not object, those incidents differed from the charged offenses and the extraneous offense in that the testimony regarding the two other incidents allowed for an inference that she might have been partially at fault. For example, regarding the first incident, C.M. explained that Brickley did not want her to go out with her friends and hit her and pulled her hair; however, she also stated that even though she called the police, she was the one who was arrested and taken to jail. Similarly, regarding the next incident, C.M. testified that Brickley took her phone and ultimately slammed her to the ground, but she also related that she got angry and grabbed a knife before he threw her to the floor.

In light of the differences between the testimony regarding the two prior acts not objected to and the testimony regarding the objected-to extraneous offense and given that the witnesses testifying before C.M. did not discuss whether there was a history of domestic abuse, the trial court could have reasonably concluded that the State's need for the evidence either weighed in favor of admission of the evidence or was neutral regarding the admission.

Given our standard of review, the presumption in favor of admissibility, and the resolution of the factors discussed above, we cannot conclude that the trial court abused its discretion by overruling Brickley's Rule 403 objection. *Cf. Work v. State*, No. 03-18-00244-CR, 2018 WL 2347013, at *12 (Tex. App.—Austin May 24, 2018, pet. granted) (mem. op., not designated for publication) (upholding trial court's ruling denying Rule 403 objection when majority of factors weighed in favor of admission of evidence), *aff'd*, No. PD-1247-18, 2020 WL 6483888 (Tex. Crim. App. Nov. 4, 2020) (op., not designated for publication).

20

For all of these reasons, we overrule Brickley's second issue on appeal.[2]

## CONCLUSION

Having overruled both of Brickley's issues on appeal, we affirm the trial court's judgments of conviction.

_____
Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:   April 15, 2021

Publish

---

[2] In addition to the brief filed by his attorney, Brickley also filed a pro se brief that raises additional issues.  However, given that Brickley is represented by counsel, we do not address the issues raised in his pro se brief.  *See Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim. App. 2006) (explaining that defendants have no right to hybrid representation on appeal).