

# NUMBER 13-23-00515-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ERVIN DEAN LUCKY,                                            Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 216TH DISTRICT COURT
## OF KERR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

A Kerr County jury convicted appellant Ervin Dean Lucky of murder, a first-degree

felony, and the trial court sentenced him to ninety-nine years' imprisonment. *See* TEX.

PENAL CODE ANN. § 19.02(c). On appeal, Lucky argues that the trial court erred by

admitting certain evidence over his objections. We affirm.[1]

## I.    BACKGROUND

Lucky was accused of murdering his wife Vivian "Irene" Niemeyer by strangling her. Trial evidence showed that, at around 8:30 p.m. on December 24, 2013, Lucky called 911 to report that his wife was laying outside his RV naked, and he thought she was dead. He said, "I just saw her laying there when I woke up." Police arrived at the scene and confirmed that Niemeyer was deceased. Officers noticed that she was partially covered by a white blanket and had blood and bruising on her head and face, and there was blood on the ground.

Police searched Lucky's RV and noticed "blood and drag marks and bloodstains coming out of the door." An officer stated that, according to her observations, it appeared that Niemeyer "was bleeding in the house and then [was] dragged through the house onto the porch, onto the decking, and out to the car." The officer also found a "premarital agreement" and "divorce document" on a coffee table in the RV.

An autopsy subsequently revealed that Niemeyer had fractures to the thyroid cartilage, cricoid cartilage, and hyoid bone in her neck. She also had several small round bruises on her arms, which the forensic pathologist testified was consistent with being "grabbed by someone." The forensic pathologist testified that Niemeyer died of "manual strangulation."

On the day of the murder, Lucky was taken to the Kerr County Sheriff's Department

---

[1] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

for questioning. During the interview, he stated that he helped Niemeyer load up her car because she was going to see her sister in San Antonio for Christmas. Afterward, he went to back to his RV to drink and watch television until he got tired and went to sleep, and when he woke up, he found Niemeyer's dead body laying outside.

The interviewing officer noticed that Lucky had "fresh" scratch marks on his neck and his right hand was red and swollen, so he was taken to Peterson Regional Medical Center in Kerrville. Lucky was diagnosed with a distal displaced fracture to the fifth metacarpal on his right hand. The emergency room physician who treated Lucky stated that this injury is known as a "boxer's fracture" because it is "classically sustained by forceful impact of a hand in a clenched fist position onto an object or subject or vice versa." The interviewing officer testified that she had worked on many "cases involving strangulation" in her twenty-nine years of experience in law enforcement, and she opined that Lucky's hand injury was consistent with someone who had strangled and punched someone.

Later, Lucky was interviewed again at the sheriff's office. A video recording of the interview was entered into evidence and played for the jury. During the interview, Lucky agreed that he had "difficulties" in his marriage, but he continued to maintain his innocence. At one point, Lucky stated that he previously had an extramarital affair with a man, of which his wife was unaware, but he said the affair was "not in the last week or two."

The State also offered witness testimony establishing that police were called to Lucky's RV on March 4, 2013. At that time, Niemeyer had injuries to her neck and arm, and officers arrested Lucky for assault. Later, on June 17, 2013, Lucky came to the

3

sheriff's office seeking to press charges against Niemeyer for sexual assault. Additionally, a neighbor testified that she often heard Lucky and Niemeyer arguing outside their residence.

Lucky was convicted as charged and this appeal followed.

## II. ADMISSION OF EVIDENCE

By two issues on appeal, Lucky contends that the trial court erred by admitting certain evidence. "We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. "Irrelevant evidence is not admissible." TEX. R. EVID. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. When undertaking a Rule 403 analysis, a trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

## A. Evidence of Extramarital Affair

Lucky's first issue concerns the admission of evidence regarding his extramarital affair with a man. He argues the evidence was inadmissible because it was irrelevant, unfairly prejudicial, and improperly used for character conformity purposes. *See* TEX. R. EVID. 402, 403, 404(b). When his counsel objected on these bases at trial, the prosecutor replied that the evidence was relevant to "intent, motive, plan, opportunity, nature of the relationship, and identity." *See* TEX. R. EVID. 404(b); TEX. CODE CRIM. PROC. ANN. art. 38.36(a). The trial court overruled the objection but agreed to issue a limiting instruction to the jury.

Even assuming the court abused its discretion by admitting the evidence, Lucky has not shown that he suffered the requisite level of harm as a result. The erroneous admission of evidence is non-constitutional error which we must disregard unless it affects the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Under this standard, an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. In deciding whether substantial rights were affected, "we consider: (1) the character of the alleged error and how it might be

5

considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Id.* If we have "fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Id.*

In arguing that the evidence was unfairly prejudicial under Rule 403, Lucky states: "Appellant's homosexual relationship and extramarital affair with another elderly man will likely be considered repugnant by the jury. This trial was held in Kerrville—the heart of the Texas Hill Count[r]y, a deeply conservat[ive] enclave where non-traditional lifestyles are reviled. This unnecessary fact alone is unfairly prejudicial." Other than this, Lucky provides no argument for how he was harmed by the admission of the subject evidence. *See* TEX. R. APP. P. 38.1(i), 44.2(b). We note that, although the prosecutor mentioned the affair once in closing argument, he did not emphasize it, nor did he mention the gender of the paramour. Moreover, considering the nature and degree of the evidence supporting the verdict—including evidence that Niemeyer died of strangulation and that Lucky had hand injuries consistent with strangling and punching someone—we find it extraordinarily unlikely that the jury was swayed by evidence of Lucky's extramarital affair. Finally, as the State observes, the trial court gave the jury a limiting instruction both at the time the evidence was admitted and in the jury charge,[2] and Lucky points to nothing in the record

---

[2] The trial court gave the following instruction before the subject video was played at trial:

Ladies and gentlemen of the jury, you're going to hear some information on the video coming up about extramarital affairs and so forth. That information is being presented to you for the limited purposes of the intent, opportunity, motive, and the nature of the relationship between the parties. You cannot consider it for any other means. Okay?

indicating that the jury failed to follow these instructions. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (noting that "we generally presume that a jury will follow the judge's instructions").

Having reviewed the record, we have "fair assurance" that the admission of this evidence "did not influence the jury, or had but a slight effect." *See Gonzalez*, 544 S.W.3d at 373; *see also* TEX. R. APP. P. 44.2(b). Lucky's first issue is overruled.

## B.    Evidence of Relationship with Victim

By his second issue, Lucky argues that the trial court erred in admitting evidence of the "abusive, aggressive and sometimes violent nature" of his relationship with Niemeyer. He points to objections made by his counsel to trial testimony: (1) that police found a premarital agreement inside his RV; (2) that a neighbor frequently heard him and Niemeyer arguing; and (3) that he was arrested for assaulting Niemeyer on March 4, 2013. Lucky argues that this "was pure character conformity evidence" and that its probative value was substantially outweighed by the "damage [sic] of unfair prejudice." *See* TEX. R. EVID. 403, 404(b).

In response, the State contends on appeal that the evidence was admissible under Texas Code of Criminal Procedure article 38.36(a), which states:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and

---

The jury charge stated:

> Evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case has been presented. This evidence was admitted only for the purpose of assisting you, if it does, in determining motive, intent, opportunity, identity and previous relationship existing between the Defendant and the deceased, you cannot consider the same for any other purpose.

7

> circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.36(a). Under article 38.36, "[t]he nature of the relationship—such as whether the victim and the accused were friends, were co-workers, were married, estranged, separated, or divorcing—is clearly admissible." *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). And "in some situations, prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship," though "specific acts of violence must meet the requirements of the Rules of Evidence in order to be admissible." *Id.*; *Fielder v. State*, 756 S.W.2d 309, 318 (Tex. Crim. App. 1988) (noting that the identical predecessor statute "in no way broadens or otherwise affects the rules of evidence which apply, or the way in which they apply in any given homicide case" (emphasis omitted)).

In his argument for why the subject evidence should have been excluded, Lucky notes that he "did not present a defensive theory or prof[f]er evidence that the homicide was accidental or the result of self-defense." He appears to argue that because of this, the probative value of the evidence was minimal. *See Gigliobianco*, 210 S.W.3d at 641. We disagree. As the State notes, the case against Lucky was circumstantial and the nature of his relationship with Niemeyer in the months leading up to the murder was relevant to establishing his motive, identity, and intent. *See* TEX. R. EVID. 403, 404(b). Though Lucky did not offer a self-defense or accident theory at trial, that does not diminish the probative value of the evidence in establishing the essential elements of the offense. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (providing that a person commits murder if he intentionally or knowingly causes the death of an individual). And there is no indication

that the evidence tended to confuse or distract the jury, suggested decision on an improper basis, or consumed an inordinate amount of time at trial. *See Gigliobianco*, 210 S.W.3d at 641–42. The trial court was within its discretion to determine that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. *See* TEX. R. EVID. 403.

Further, "in cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship" as contemplated in article 38.36 "may be the purpose for which evidence of prior bad acts will be admissible" under Rule 404(b). *Garcia*, 201 S.W.3d at 703–04 (holding evidence that appellant had previously pushed victim out of a vehicle several years before the victim's murder was admissible under Rule 404(b) to illustrate the nature of their relationship); *Chavez v. State*, 399 S.W.3d 168, 173 (Tex. App.—San Antonio 2009, no pet.) (concluding that trial court did not err in overruling Rule 404(b) objection to evidence that appellant previously assaulted the murder victim because it "helped illustrate the nature of their relationship"); *see* TEX. CODE CRIM. PROC. ANN. art. 38.36(a); *see also Tello v. State*, No. 04-18-00220-CR, 2019 WL 4044027, at *5 (Tex. App.—San Antonio Aug. 28, 2019, pet. ref'd) (mem. op., not designated for publication) (holding evidence of prior domestic violence between appellant and murder victim was admissible because it "illustrate[d] the nature of [their] relationship" and demonstrated appellant's motive). Here, the trial court was within its discretion to determine that the evidence was admissible under Rule 404(b) for this reason. *See* TEX. R. EVID. 404(b).

We cannot conclude that the trial court acted outside the zone of reasonable disagreement in overruling Lucky's objections to this evidence. *See Wells*, 611 S.W.3d at

9

427. His second issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
13th day of March, 2025.